OPINION OF THE COURT
Thomas A. Demakos, J.
The defendant, currently under indictment in this State for murder in the second degree, assault in the first degree and criminal possession of a weapon in the second degree, has moved pursuant to CPL 580.20, the Interstate Agreement on Detainers (IAD) and CPL 30.20 to have the indictment dismissed with prejudice.
The defendant, who was indicted on the above charges on April 21, 1980, and arraigned shortly thereafter, made *128 $50,000 bail and was released on June 13, 1980. Various adjournments to prepare and answer pretrial papers followed, culminating in a warrant issued by the court on November 12, 1980 in order to secure the defendant’s appearance before it on these charges.
On April 8, 1981 the defendant was arrested in South Carolina on forgery charges. On April 14, 1981, while awaiting disposition of his case in South Carolina, the defendant wrote a letter to the Kings County District Attorney requesting to return to New York as soon as possible for the disposition of his murder indictment. Acting upon this information, the District Attorney’s office filed a fugitive warrant in South Carolina and, being assured by South Carolina authorities that any prosecution on their part would be held in abeyance until final disposition of all New York charges, commenced extradition proceedings to return the defendant to New York.
On May 4, 1981, however, the defendant pleaded guilty to the South Carolina charges and was sentenced to five years’ imprisonment, wheréupon United States marshals brought him back to the Eastern District of New York to face Federal charges. On May 25,1981 the defendant then wrote a second letter to the District Attorney of Kings County advising him that he was now incarcerated at the Metropolitan Correctional Center (MCC) in Manhattan and once again requesting a disposition on his outstanding indictment.
On June 15, the extraditions bureau of the Kings County District Attorney’s office received information from South Carolina officials to the effect that the defendant was now being held by Federal officials of the Eastern District. This resulted in a warrant being filed with the Eastern District marshal. However, two days later, the bureau was informed by the Governor’s office that it would not continue paperwork on the extradition since the defendant was in Brooklyn awaiting trial. In the interim, the defendant had been sentenced to one year by Judge Cader of the Eastern District and, on the same day (June 5) was arraigned on new Federal charges. Frequent phone calls by the Kings County District Attorney’s office to the United States Attorney’s office uncovered that the complaint in the sec *129 ond case was in the process of being re-evaluated and that the District Attorney would be advised as to when the defendant would^ be made available. More phone calls proved fruitless, and on July 28 an Assistant United States Attorney contacted the District Attorney’s office and stated that the defendant was now available. On that same day, the District Attorney began proceedings under the IAD by filing prisoner production papers with the Department of Correctional Services. However, the defendant was in fact not available because the indictment on the second Federal case (28 counts of uttering and raising the value of United States postal money orders) was still pending.
The defendant was brought to trial on November 16, 1981 and thereafter convicted of all 28 counts. On January 14, 1982 Judge McGloughlin sentenced the defendant to four years on each count to run concurrently to each other but consecutively to the -one-year sentence given on the first Federal conviction.
Commitment papers were received by MCC on February 19,1982. At this time, Federal officials put into motion the necessary paperwork to make the defendant available to the Kings County District Attorney.
On April 14, 1982 the defendant was served by MCC with the IAD papers and, although finally acknowledging receipt on April 29, the defendant refused to sign the 30-day waiver form. As a result, a 30-day hold was put on the defendant, and on June 28,1982, MCC advised the District Attorney’s office of Gabbidon’s inmate status. On July 23 the District Attorney received the agent’s authority form from the New York State Department of Correctional Services and the defendant was brought to complex H of the Kings County Supreme Court on August 11, 1982.
The IAD was adopted by this State (CPL 580.20) and others in order to standardize rendition procedures and thereby preserve a defendant’s constitutional right to a speedy trial (People ex rel. Kendall v Follette, 47 AD2d 546; People v Diaz, 94 Misc 2d 1010).
The defendant claims that his letters of April 14, 1981 and May 25, 1981, written to the District Attorney of Kings County should be considered a request for final *130 disposition (CPL 580.20, art 3, subd [a]) and that the failure to bring him to trial on the murder charges within the 180-day statutory limit warrants dismissal of the indictment.
A review of the facts of this case, as presented at the hearings, shows that the defendant’s contentions are without merit.
The provisions of the IAD do not apply to a defendant incarcerated in a signatory’s jurisdiction until that defendant has commenced serving his prison sentence (Matter of Cresong v Nevil, 51 AD2d 1096; People v Randolph, 85 Misc 2d 1022). It is clear that at the time the defendant wrote his first letter, he was untried on the South Carolina charges and, in fact, was not sentenced until three weeks later. Also, at the time the defendant wrote his second letter, the record shows that he had not as yet been sentenced on the first Federal charge. It must also be noted that in sending his letters directly to the Kings County District Attorney, the defendant had failed to follow the procedures as enunciated in CPL 580.20 (see People v Primmer, 59 AD2d 221, affd 46 NY2d 1048). Although failure on the part of the sending State to forward proper papers will not vitiate the defendant’s right under the IAD (see People v McBride, 44 NY2d 1001), it is incumbent upon the defendant to provide prison officials with the required notice so that they may fulfill the remainder of the statutory provisions (see People v Diaz, supra).
During the time that the defendant was in Federal custody, the District Attorney was in continuous contact with Federal officials in an effort to obtain the defendant as soon as practical. Federal officials refused to surrender temporary custody of the defendant until final disposition of all Federal charges.
The defendant was sentenced on his second Federal conviction on January 14, 1982, and final commitment papers on this sentence were received by Federal officials at the MCC on February 19,1982. It was only at this point that the defendant became a sentenced prisoner under IAD and could be made available to the District Attorney (see People v White, 51 AD2d 221; see, also, People v Chan, 81 AD2d 765).
*131 Although the time period between February 19,1982 and the date the defendant was produced before this court, August 11,1982, is less than 180 days, thereby mandating denial of defendant’s motion under CPL 580.20, his constitutional speedy trial motion remains.
A defendant’s right to a speedy trial is guaranteed by both the Federal Constitution (US Const, 6th, 14th Amdts; see Dickey v Florida, 398 US 30, 37-38) and statute (CPL 30.20; Civil Rights Law, § 12). There is no specific time limitation applicable (People v White, 32 NY2d 393); instead, a balancing test is applied on an ad hoc basis to make a speedy trial determination (Barker v Wingo, 407 US 514, 530). The factors examined in determining a violation of a defendant’s right to speedy trial are: (1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired in any way (People v Taranovich, 37 NY2d 442, 445; People v Gates, 70 AD2d 734; see Barker v Wingo, supra).
Between April 21, 1980, when the defendant was indicted on a murder charge (the most serious of crimes), and November 12, 1980, when a warrant was issued due to defendant’s failure to appear, every delay was attributable to the defendant. Between April 8, 1981 and February 19, 1982, the defendant was unavailable due to pending charges in South Carolina and the Eastern District of New York. As has already been decided by this court, the defendant first was made available to the Kings County District Attorney on February 19,1982. The defendant was not advised of the detainer lodged against him until April 14,1982. This delay of 54 days was attributable to processing of the IAD papers at the MCC. Although this delay may very well be attributed to the People (cf. People v Johnson, 38 NY2d 271, with People v Ganci, 27 NY2d 418, cert den 402 US 924, and People ex rel. Franklin v Warden, 31 NY2d 498), it did not appear in any way to be intended to prejudice the defendant.
In failing to sign a waiver, the 30-day stay in transmitting the defendant went into effect on April 29,1982 (CPL *132 580.20, art 4, subd [a]). The remaining time between May 29, 1982 and the defendant’s production before this court was taken up by the mechanics of implementing the IAD and concurrent measures to assure that defendant’s rights have been fully protected (see United States v Ewell, 383 US 116, 120; cf. People v Chan, supra, at p 765 [the time period between filing the detainer on a sentenced prisoner and the resultant production of that prisoner in the filing jurisdiction should be excludable time]).
Although it has been established that a protracted incarceration of a defendant can be detrimental to his ability to prepare for trial, the defendant in the instant case had actually been released on bail and his subsequent arrest in South Carolina and resultant confinement from April 8, 1981 to August 11, 1982 cannot be attributable to the prosecution in this instance but to three subsequent convictions which will keep him incarcerated a minimum of 10 years.
Finally, it has not been demonstrated by the factual development of this case that any delay resulted in an impairment of the defendant’s ability to defend himself at trial.
Close scrutiny of the relevant case law as applied to the balancing of factors in the situation sub judice mandates a holding that the delay was not so great under the circumstances as to constitute a violation of the defendant’s constitutional and statutory right to a speedy trial.
Defendant’s motion to dismiss the indictment under CPL 580.20 and 30.20 is denied.