763 So.2d 473 (2000)
STATE of Florida, Appellant,
v.
William FAY, Appellee.
No. 4D99-0622.
District Court of Appeal of Florida, Fourth District.
June 21, 2000.
Rehearing Denied August 14, 2000.
*474 Robert A. Butterworth, Attorney General, Tallahassee, and Sarah B. Mayer, Assistant Attorney General, West Palm Beach, for appellant.
Fred Haddad of Haddad & Hester, P.A., Fort Lauderdale, for appellee.
STONE, J.
We reverse an order granting Appellee's motion to dismiss on the ground that his right to a speedy trial under the Interstate Agreement on Detainers (IAD), section 941.45(3), Florida Statutes, was violated.
Appellee was charged by information in 1992, arrested, and placed in a residential treatment facility, where he was to remain until further order of the court. He absconded from the facility and a capias was issued. Appellee was arrested in New Jersey, where he pled guilty to charges in June 1995 and was sentenced in October 1995. After sentencing, Appellee remained in the Union County Jail awaiting transfer to a New Jersey state prison.
In October 1995, Appellee mailed a document entitled "Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments, Informations, or Complaints" to the circuit court judge assigned to his Florida case and to the Broward County state attorney's office, wherein he requested final disposition of all untried informations. The state acknowledged that it received the request. In May 1996, the state sent a request for temporary custody of Appellee for trial on the pending charges. Appellee was ultimately returned to the custody of the state in August. Thereafter, Appellee filed a motion to dismiss, asserting that he had not been brought to trial within 180 days of his request for disposition of charges, as required by the IAD. The state moved to strike Appellee's motion, arguing that Appellee's request was not in substantial compliance with the IAD as it was not sent by certified mail and was not accompanied by the required certifications of the official having custody over Appellee. The state further asserted that the IAD does not apply to persons awaiting transfer, housed in county jail prior to entry into the state prison system.
Section 941.45(3), Florida Statutes, the IAD, provides for disposition of charges pending against a prisoner in another jurisdiction:
(3) REQUEST FOR FINAL DISPOSITION
(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance *475 of the term of imprisonment there is pending in any other party state any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he or she shall be brought to trial within 180 days after the prisoner shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his or her imprisonment and the prisoner's request for a final disposition to be made of the indictment, information, or complaint.... The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.
(b) The written notice and request for final disposition referred to in paragraph (a) shall be given or sent by the prisoner to the warden, commissioner of corrections, or other official having custody of the prisoner, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.
Substantial compliance with the requirements of section 941.45(3) is sufficient to invoke the benefits of the IAD. See State v. Roberts, 427 So.2d 787, 789 (Fla. 2d DCA 1983). Courts adopting the substantial compliance standard have generally held that "[i]f the prisoner makes a good faith effort to bring himself within the Agreement's purview, and omits nothing essential to the Agreement's operation, then his failure of strict compliance will not deprive him of its benefits." Id. at 790(emphasis added)(quoting State ex rel. Saxton v. Moore, 598 S.W.2d 586, 590 (Mo.Ct.App. 1980)).
We conclude that Appellee's request did not substantially comply with section 941.45(3) because it was sent by Appellee and was not accompanied by a certificate of the prison official holding him in custody. Further, the request did not contain required information, such as the term of commitment, the time already served, the time remaining to be served, the amount of good time earned, or the time of parole eligibility. See State v. Culligan, 454 So.2d 700 (Fla. 4th DCA 1984)(order dismissing information reversed where request for disposition was unaccompanied by information required by the statute). See also Torres-Arboledo v. State, 524 So.2d 403 (Fla.1988); Coit v. State, 440 So.2d 409 (Fla. 1st DCA 1983).
Moreover, we find that the provisions of the IAD do not apply to a defendant incarcerated in another jurisdiction until that defendant has been placed in the custody of the prison system administration. See United States v. Taylor, 173 F.3d 538 (6th Cir.), cert. denied, ___ U.S. ___, 120 S.Ct. 448, 145 L.Ed.2d 365 (1999); Crooker v. United States, 814 F.2d 75 (1st Cir.1987); United States v. Wilson, 719 F.2d 1491 (10th Cir.1983); People v. Gabbidon, 116 Misc.2d 127, 455 N.Y.S.2d 244 (Sup.Ct.1982). In Taylor, the court recognized that a prisoner housed in a local jail pending transfer to a state prison was not housed in a correctional facility so as to be entitled to bring the IAD into play, stating:
There is sharp disagreement among courts as to whether the IAD is triggered when a detainer is lodged against a convicted and sentenced prisoner who is being held in temporary custody pending a transfer to his permanent incarceration. The reasoning behind the two positions on this question is cogently summarized by the Supreme Court of North Dakota in Runck v. State, 497 N.W.2d 74 (N.D.1993):
Courts which rule that a detainer lodged against a prisoner in temporary custody is of no effect and does *476 not bring the IAD into play reason that, because the basic purpose of the IAD is to prevent interference with institutional care and rehabilitation, which is not normally available at a facility or jail designed for temporary custody of prisoners, "one cannot interrupt that which has not yet started." Courts which decline to distinguish between temporary and correctional custody in establishing the point at which the protections of the IAD become applicable reason that a rule encompassing all post-sentence confinement would be easier to apply, would avoid the possibility of encouraging the sending state to extend the period of confinement in a temporary facility because of outstanding detainers, and would alleviate judicial examination of an individual prisoner's rehabilitative status while in temporary confinement whenever an IAD claim is raised.
Id. at 81 (citations omitted). After reviewing the relevant cases from this circuit and those of our sister circuits and the reasoning behind the IAD, we conclude that "correctional facility" is correctly understood as meaning the state facility to which the Defendant is ultimately assigned, not the local facility in which he sits awaiting transfer to that facility. As Runck notes, "the basic purpose of the IAD is to prevent interference with institutional care and rehabilitation, which is not normally available at a facility or jail designed for temporary custody of prisoners," id. While there may be an occasional case in which a defendant awaiting transfer is involved in rehabilitative programs offered at the local facility, such rehabilitation efforts themselves ultimately would be disrupted by that defendant's transfer to his permanent correctional residence.
Taylor, 173 F.3d at 541. Although we recognize that some courts have declined to distinguish between temporary and correctional custody when establishing the point at which the protections of the IAD become applicable, see, e.g., People v. Helmstetter, 914 P.2d 474 (Colo.Ct.App. 1995); Escalanti v. Superior Court, 165 Ariz. 385, 799 P.2d 5 (Ariz.Ct.App.1990); Felix v. United States, 508 A.2d 101 (D.C. 1986), we deem it necessary to resolve the issue. We, therefore, conclude that the request in this case was of no effect because it was filed prior to Appellee's transfer to his permanent correctional residence.
The order of dismissal is reversed on the basis of Appellee's failure to comply with the IAD and because the IAD is inapplicable where the prisoner has not yet been placed in the custody of the prison authorities. The cause is remanded for further proceedings.
DELL and STEVENSON, JJ., concur.