BERGER, J.
Wray Dawes appeals the trial court’s order denying his motion to dismiss, which was premised on the State’s failure to bring him to trial within 180 days as required under the Interstate Agreement on Detainers Act (“IADA”). Because we agree with the trial court’s determination that a county jail does not qualify as a state facility under the IADA, we affirm.
Dawes was serving a twelve-month sentence in the Plymouth County, Massachusetts Correctional Facility, a county jail, when a detainer was placed on him for outstanding charges in Orange County, Florida.[1] Thereafter, he sought to resolve his Florida case through the IADA by providing an inmate request to the jail stating he needed to “put in for my final disposition, waiver of extradition and speedy trial.” On March 29, 2011, Dawes was notified by jail officials that Florida would not extradite him until he completed his sentence in Massachusetts.[2] He was ultimately returned to Florida on October 15, 2011, at which time the warrant on the Orange County charges was executed.
Dawes moved to dismiss the charges, claiming the State’s failure to bring him to trial within 180 days of his request for final disposition under the IADA required the final dismissal of the charges. Relying on State v. Fay, 763 So.2d 473 (Fla. 4th DCA 2000), the trial court denied the motion after concluding the IADA did not apply to inmates serving sentences in county jail facilities. Dawes later entered a plea, reserving his right to appeal the detainer issue.
Having considered the issue, we affirm. The IADA is a compact entered into by forty-eight States, the District of Columbia, Puerto Rico, the Virgin Islands, and United States. Monroe v. State, 978 So.2d 177, 179 (Fla. 2d DCA 2007). The act presumes that prison *422 treatment and rehabilitation programs are negatively impacted by a prisoner’s lengthy absence from a jurisdiction in connection with outstanding charges. To counter these problems, the IADA encourages the expeditious and orderly disposition of any and all detainers based on untried indictments, informations or complaints. See § 941.45(1), Fla. Stat. (2011); United States v. Wilson, 719 F.2d 1491, 1494 (10th Cir.1983) (finding IADA was enacted to prevent the obstruction of programs of treatment or rehabilitation frustrated by “numerous absences in connection with successive proceedings related to pending charges in another jurisdiction”) (quoting United States v. Roberts, 548 F.2d 665, 670-71 (6th Cir.1977)); State v. Butler, 496 So.2d 916, 917 (Fla. 2d DCA 1986) (“The purpose of the act is to ‘obviate difficulties in securing speedy trials of persons incarcerated in other jurisdictions and to minimize the time during which there is an inherent danger that a prisoner may forego preferred treatment or rehabilitation benefits.’ ”) (quotation and citation omitted). Under the IADA, a prisoner must be brought to trial within 180 days of his request for a final disposition of charges to the extent he has entered upon “a term of imprisonment in a penal or correctional institution of a party state.” § 941.45(III)(a), Fla. Stat. (2011). The statute provides:
(III) REQUEST FOR FINAL DISPOSITION
(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he or she shall be brought to trial within 180 days after the prisoner shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer’s jurisdiction written notice of the place of his or her imprisonment and the prisoner’s request for a final disposition to be made of the indictment, information, or complaint .... The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.
Id. (emphasis added).
The issue before us is whether a one-year sentence in a county jail is “a term of imprisonment in a penal or correctional institution of a party state,” as those terms are used in Article III of the IADA. Federal law governs the interpretation of the IADA, State v. Edwards, 509 So.2d 1161, 1163 (Fla. 5th DCA 1987), which states it is to be “liberally construed so as to effectuate its purposes.” § 941.45(IX), Fla. Stat. (2011).
Neither the term “imprisonment” or the phrase “penal or correctional institution of a party state” is defined by the IADA. A “term of imprisonment” has been described as “that definable period of time during which a prisoner must be confined in order to complete or satisfy the [p]rison term or sentence which has been ordered.” United States v. Dobson, 585 F.2d 55, 58-59 (3d Cir.1978) (explaining further that because a pretrial detainee’s confinement is tentative and dependent upon verdict at trial and imposition of sentence, he has no “immediate interest” in institutional rehabilitation or treatment). Dictionary definí- *423 tions, however, suggest a distinction between state prison and local jail facilities. Black’s Law Dictionary defines “penal institution” as a prison, which, in turn, is defined as “[a] state or federal facility of confinement for convicted criminals, esp. felons.” Black’s Law Dictionary 1247, 1814 (9th ed. 2009). A “jail” is defined as “[a] local government’s detention center where persons awaiting trial or those convicted of misdemeanors are confined.” Black’s Law Dictionary, 910 (9th ed. 2009).
Nonetheless, various state courts have reached differing results on whether prisoners serving sentences in county jails may avail themselves of the IADA. For example, the Colorado Court of Appeals held that, for the purposes of the IADA, facilities, including county jails, where inmates are sentenced to incarceration are “penal or correctional institutions of a party state.” See People v. Walton, 167 P.3d 163, 166 (Colo.App.2007). It determined that construing “penal or correctional institutions” to include jails as well as prisons was consistent with the purpose of the IADA since some defendants may be ordered to serve their sentences in a jail that may offer rehabilitative programs the same as prisons often do. Likewise, the Tennessee Supreme Court found “that a ‘term of imprisonment’ begins when a prisoner has been sentenced and confined, even when the prisoner is serving the sentence in a temporary detention facility or a county jail.” State v. Springer, 406 S.W.3d 526, 538 (Tenn.2013). On the other hand, the Nevada Supreme Court has held that a jail is not a penal or correctional institution based on the assumption that jails do not offer rehabilitative services. See State v. Wade, 105 Nev. 206, 772 P.2d 1291, 1294 (1989); see also Dorsey v. State, 490 N.E.2d 260 (Ind.1986) (holding that IADA was intended to benefit persons serving time in prison), overruled on other grounds by Wright v. State, 658 N.E.2d 563 (Ind.1995).
Here, the State relied on Fay to argue the IADA is inapplicable to prisoners held in county jail facilities. In Fay, the defendant filed a request under the IADA while temporarily housed in a county jail facility awaiting transfer to his “permanent correctional residence,” a New Jersey state prison. 763 So.2d at 475. Under those circumstances, the Fourth District held that the IADA did not apply. Id.[3]
Dawes, however, was not awaiting transfer; rather, he was under sentence serving his time in a county facility. Nevertheless, we believe the end result is the same. Article III of the IADA is clear that in order for a defendant to avail himself of the provision for speedy trial disposition, he must first be incarcerated in a state penal or correctional institution. See § 941.45(III)(a), Fla. Stat. (2011). If the legislative intent were to include both local and state facilities, the statute would have so read. Florida law distinguishes between county jails and correctional institutions. Florida’s correctional system, which is made up of all prisons and other correctional institutions, is under the jurisdiction of the Department of Corrections, see § 944.02(2), Fla. Stat. (2011), while county *424 detention facilities are locally controlled and operated by the sheriff. See § 951.061, Fla. Stat. (2011). Moreover, because Florida defines a state correctional institution as “any prison ... or other correctional institution ... in which prisoners are housed, worked, or maintained, under the custody and jurisdiction of the department, § 944.02(8), Fla. Stat. (2011), which is a state agency, we conclude that for the purposes of the IADA, “penal or correctional institutions of a party state” do not include county jails.[4]
At the time Dawes sought to resolve his Florida charges through the IADA, he was serving a sentence in the Plymouth County, Massachusetts Correctional Facility, a county jail, not a penal or correctional institution of the State of Massachusetts. Accordingly, the IADA did not apply to him.
AFFIRMED.
SAWAYA and COHEN, JJ„ concur.

. The Florida detainer was based on a warrant charging Dawes with two counts of kidnapping with intent to commit a life felony (with a firearm), home invasion robbery (with a firearm), aggravated battery with a firearm, possession of a firearm by a convicted felon, two counts of aggravated assault with a firearm, and grand theft of $100 or more from a dwelling or curtilage.

. In his motion, Dawes argued the 180-day time period began to run on March 28, 2011, because that is the date jail officials responded to his inmate request and informed him Orange County would not extradite. Nevertheless, we are unable to conclude that the 180 day time period began to run on this date. The United States Supreme Court has determined that “the 180-day time period in Article 111(a) of the IADA does not commence until the prisoner’s request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him.” Fex v. Michigan, 507 U.S. 43, 52, 113 S.Ct. 1085, 122 L.Ed.2d 406 (1993). Although the record contains an inmate request and staff response form, dated March 29, 2011, stating, "I spoke with Florida (Orange County Sheriff’s Department) they told me that you are ineligible for an IAD and that you will be picked up after you complete your sentence,” nothing contained therein indicates Dawes’ request under the IADA was delivered, as required, to either the court or prosecuting officer.

. The Fourth District found support in United States v. Taylor, 173 F.3d 538 (6th Cir.1999), wherein the federal circuit court found that a prisoner housed in a local jail pending transfer to a state prison was not housed in a correctional facility so as to be entitled to the provisions of the IADA. The circuit court reasoned that the IADA serves to prevent interference with institutional care and rehabilitation — programs that are not normally available at a facility or jail designed for temporary custody of prisoners. Id. (quoting Runck v. State, 497 N.W.2d 74 (N.D.1993) (quotations omitted)). Thus, because the prisoner had yet to begin his rehabilitation while held in the temporary facility, his rehabilitation could not be interrupted.

. By contrast, a "county detention facility” is defined as "a county jail, a county stockade, a county work camp, a county residential probation center, and any other place except a municipal detention facility used by a county or county officer for the detention of persons charged with or convicted of either felony or misdemeanor.” § 951.23(l)(a), Fla. Stat. (2011).