Stephen Scott **CROOKER,**
**Plaintiff, Appellant,**

v.

**UNITED STATES of America,**
**Defendant, Appellee.**

No. 86–1722.

United States Court of Appeals,
First Circuit.

Argued Jan. 6, 1987.

Decided March 26, 1987.

76

Mark J. Albano with whom Goldman, Albano, Caruso and Fierberg, Springfield, Mass., was on brief, for plaintiff, appellant.

C. Brian McDonald, Asst. U.S. Atty., with whom Robert S. Mueller, III, U.S. Atty., Boston, Mass., was on brief, for defendant, appellee.

Before COFFIN, Circuit Judge,
ALDRICH and ROSENN,* Senior Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

■ Defendant Crooker appeals an adverse decision in this 28 U.S.C. § 2255 attack on his sentence, claiming inadequate representation by counsel. We find his contentions fully answered by the district court, except for one matter of consequence on which we part company with the court's reasoning, but, nevertheless, af-

firm.[1] This issue arises from counsel's not invoking the provisions of the Interstate Agreement on Detainers Act (IAD), a compact in which the federal government joins with the states in protecting prisoners' rights. 18 U.S.C.App. *See generally Carchman v. Nash,* 473 U.S. 716, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985); *United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978). The district court held that the IAD had been violated and that the violation—which, if raised as a timely defense, would have required dismissal of the indictment with prejudice—was not waived by defendant's guilty plea because he, and counsel, were ignorant of the violation. However, it also held that,

failure to raise an IAD defense was [not] tantamount to ineffective assistance of counsel for two reasons.

First, the Court doubts whether a reasonably competent criminal attorney can be charged with the knowledge of IAD, especially in its less than straight-forward application to the facts of this case. [Citations omitted.]

Second, and more important, ... there would have been no reason for the attorney to have known a detainer had been filed and that the IAD was in effect as to his client.

Before considering the court's conclusions, we start at the beginning. On January 25, 1983, defendant was indicted in the District Court for the District of Massachusetts. On February 17, while he was being held in the Hampden (Mass.) County jail awaiting state sentencing, the district court issued a writ of habeas corpus ad prosequendum ordering that the defendant be brought to the district court for arraignment. On the same day, the United States Marshals Service filed a "detainer" with

* Of the Third Circuit, sitting by designation.

1. In addition to challenging the district court's conclusions, defendant alleges that the court abused its discretion in limiting the scope of the evidentiary hearing in this matter to three of the numerous claims advanced in support of his petition. He does not indicate, however, why further inquiry was appropriate, or what facts were in dispute, or any other reason for expand-

ing the scope of the hearing, other than to suggest that the "cumulative effect" of counsel's alleged failings warranted the approval of his petition. The court discussed these various failings in some detail, and we find no error in its decision to limit the scope of the hearing. *Cf., e.g., McCarthy v. United States,* 764 F.2d 28, 31 (1st Cir.1985); *United States v. Butt,* 731 F.2d 75, 77–78 (1st Cir.1984).

the Hampden County Sheriff.[2] The habeas writ called for defendant's appearance in the district court on February 22. Apparently at defendant's request, this date was changed to February 24, so that defendant could be sentenced in the superior court on February 23. Sentence was, in fact, so imposed, defendant remaining in the county jail thereafter. On February 24 he was taken to the district court in the custody of the Sheriff, where he was arraigned.

■ That night, according to the district court's opinion, state officers "returned [defendant] to a Massachusetts correctional facility." More precisely, defendant was "taken" to the Massachusetts Correctional Institution at Concord, where he was to serve his sentence, an important matter, because we hold that the IAD does not apply to defendants in custody prior to commencement of service of sentence.

■ The reason for the IAD, as stated in Article I, is that detainers' interference with the rights of "persons already incarcerated" in other jurisdictions "produce[s] uncertainties which obstruct programs of prisoner treatment and rehabilitation." Consistent with this purpose, Article II(b) defines a "Sending State" as a state "in which a prisoner is incarcerated"; Article III, the initial substantive section, commences, "(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution...."; and Article IV refers to a prisoner "serving a term of imprisonment" when custody is requested and "returned to the original place of imprisonment" following trial on the indictment, information, or complaint for which he was sought. The government, accordingly, cites a number of cases for the proposition that the "IAD does not apply.... where a 'detainer' is lodged against a person who is not serving a sentence." *See United States v. Roberts,* 548 F.2d 665, 671 (6th Cir.1977), *cert. denied,* 431 U.S. 920, 97 S.Ct. 2188, 53 L.Ed.2d 232, 931, 97 S.Ct. 2636, 53 L.Ed.2d 246, 433 U.S. 913, 97 S.Ct. 2984, 53 L.Ed.2d 1098; *United States v. Harris,* 566 F.2d 610, 612–13 (8th Cir.1977); *United States v. Reed,* 620 F.2d 709, 711 (9th Cir.1980), *cert. denied,* 449 U.S. 880, 101 S.Ct. 229, 66 L.Ed.2d 104. These cases involved the claim of a pretrial detainee to the protections of the IAD. Although the claim here is arguably distinguishable—defendant having been sentenced on state charges the day before he was brought to federal court for arraignment—their reasoning is instructive:

> Williams [who was a pretrial detainee in New York prior to being taken into federal custody] argues that upon subsequent conviction in the New York proceedings he would be entitled to credit for time served in the detention facility, and thus he was serving a term of imprisonment when he was transferred to Michigan. Such an interpretation would not further the purposes of the Agreement. Williams was in a holding facility on a temporary commitment. Though he was engaged in a program of rehabilitation at the center, he would necessarily be required to drop that program upon his eventual transfer to a permanent facility. We conclude that the Agreement is only concerned that a sentenced prisoner who has entered into the life of the institution to which he has been committed for a term of imprisonment not have programs of treatment and rehabilitation obstructed by numerous absences in connection with successive proceedings related to pending charges in another jurisdiction. *Roberts,* 548 F.2d at 670–71.

The basic purpose of the IAD is to prevent interference with institutional care and rehabilitation, and one cannot interrupt that which has not yet started. This reasoning applies also to cases such as this one, where, though he has been sentenced, the defendant has not yet been taken to the correctional facility to commence service. The conclusion also fits the language.

This view of the Act is consistent with the approach taken in a number of recent

---

**2.** In view of our disposition of this case, we need not consider the government's contention, rejected by the court, that this document, though captioned as such, was in fact not a "detainer" within the meaning of the IAD.

opinions. *See United States v. Glasgow,* 790 F.2d 446, 448–50 (6th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 1647, 90 L.Ed.2d 191; *United States v. Wilson,* 719 F.2d 1491, 1494–95 & n. 1 (10th Cir.1983); *Lublin v. Johnson,* 628 F.Supp. 1496, 1499–1500 (E.D.N.Y.1986). In *Felix v. United States,* 508 A.2d 101 (D.C.1986), the court declined to distinguish between temporary and correctional custody in establishing the point at which the protections of the IAD become applicable. The court suggested that a rule encompassing all post-sentence confinement would be easier to apply and would avoid the possibility of encouraging the sending jurisdiction to extend the period of confinement in a temporary facility. *See id.* at 106. Nevertheless, the statutory language is a bright line precisely measuring its purpose, and we are not persuaded to enlarge it. Thus, if counsel had sought to raise the IAD with respect to the federal arraignment on February 24, it would have been to no avail.[3]

■ On April 13 defendant, at his request, was brought to the federal court in order to confer with counsel, and to turn over a toxic substance to the government with the hope of ameliorating his sentence. While he would invoke the Act here, we agree with the court that this was not a violation. Defendant cannot request what might be a violation of the Act, and then assert the requested action as grounds for his release. *See Gray v. Benson,* 608 F.2d 825, 827 (10th Cir.1979); *United States v. Dixon,* 592 F.2d 329 (6th Cir.1979), *cert. denied,* 441 U.S. 591, 99 S.Ct. 2179, 60 L.Ed.2d 1056.

Defendant was brought to the federal court on two subsequent occasions; once for trial (resulting in a plea), and once for sentencing. Conceivably, these visits also could call into question the applicability of the IAD. However, beyond a general assertion that defendant's "shuttling" violated the Act, defendant does not address these instances, and we will not pursue them.

■ We cannot leave this case, however, without commenting upon the court's "doubts whether a reasonably competent criminal attorney can be charged with knowledge of the IAD." This is too important a provision to be occulted by the ignorance of counsel. *Cf. United States v. Williams,* 615 F.2d 585 (3d Cir.1980), *on remand,* 502 F.Supp. 721 (W.D.Pa.1980). *But cf. Kowalak v. United States,* 534 F.Supp. 186 (E.D.Mich.1982) ("In light of this Court's prior finding that at the time the plea was entered [1976] the legal community was generally unaware of the existence of the IAD, it is the opinion of this Court that counsel's unawareness of the provisions of this Act did not prevent her from … 'rendering reasonably effective assistance.' ") (citation omitted), *aff'd without opinion,* 714 F.2d 143 (6th Cir.1983). We need not decide, however, whether either the rescheduling of defendant's arraignment until after state sentencing, or counsel's apparent unawareness of the detainer, excuses what we would otherwise regard as a cognizable claim for ineffective assistance of counsel.

*Affirmed.*

---

3. In view of our finding that the IAD is inapplicable, we do not reach the government's criticism of the court's conclusion, after careful consideration, that the brevity of defendant's stay in federal custody does not absolve what would otherwise constitute a violation of the Act.

*Compare, e.g., United States v. Roy,* 771 F.2d 54, 59–60 (2d Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 1520, 89 L.Ed.2d 918 *with United States v. Schrum,* 504 F.Supp. 23, 26–28 (D.Kan. 1980), *aff'd,* 638 F.2d 214 (10th Cir.1981).