**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellant,**

**v.**

**Stanley BROWN, Defendant–Appellee.**

No. 91CA0199.

Colorado Court of Appeals,
Div. III.

Oct. 22, 1992.

As Modified on Denial of Rehearing
Jan. 21, 1993.

Rehearing Denied Feb. 25, 1993.

Certiorari Denied July 12, 1993.

Norman S. Early, Jr., Dist. Atty., Martin F. Egelhoff, Deputy Dist. Atty., Denver, for plaintiff-appellant.

David F. Vela, State Public Defender, Robin Desmond, Deputy State Public Defender, Denver, for defendant-appellee.

Opinion by Judge METZGER.

The People appeal the judgment dismissing the complaint and information charging aggravated robbery against the defendant, Stanley Brown. This judgment was based on the trial court's determination that Colorado had violated the speedy trial and notice provisions of the Interstate Agreement on Detainers Act (IAD), § 24–60–501, et seq., C.R.S. (1988 Repl.Vol. 10B). We reverse and remand for reinstatement of the charges and for such further proceedings as may be necessary.

## I.

The relevant facts are not in dispute. On August 9, 1989, federal authorities arrested defendant for alleged violation of his federal parole, and he was held at the Federal Correctional Institution in Englewood, Colorado, pending resolution of parole revocation proceedings.

On October 30, 1989, in Denver District Court, defendant was charged with aggravated robbery for an incident which had occurred shortly before his August 9 arrest. Denver police lodged a detainer against defendant on November 17, 1989, charging aggravated robbery and mandatory sentence violent crime.

On December 5, 1989, after a hearing, a panel of the United States Parole Commission revoked defendant's parole based on his admission of drug use. It imposed no penalty, ordered that defendant's case be continued to consider the aggravated robbery charge, and rescheduled his hearing date.

On December 8, 1989, defendant wrote the Denver district attorney and requested

final disposition of his aggravated robbery charges.

On April 17, 1990, after further hearing, the parole commission found that defendant had violated his federal parole by committing the aggravated robbery. It then revoked his parole and, in a final order, ordered the defendant to incarceration in a Bureau of Prisons facility. Defendant was then recommitted to Leavenworth Federal Penitentiary in Kansas.

Defendant filed a *pro se* motion in the Denver District Court on June 14, 1990, invoking his "rights to due process as set forth in the Interstate Agreement on Detainers Act" and sought dismissal of the state complaint and information. Thereafter, defendant remained in custody at the federal facility in Englewood until he was received at Leavenworth on June 22, 1990.

Denver authorities lodged a detainer against defendant, based on the robbery charge, on June 28, 1990, with the federal authorities at Leavenworth. He received written "notice of untried indictment, information or complaint, and of right to request disposition" on July 16, 1990. On September 12, 1990, defendant was returned to temporary state custody in Colorado pursuant to the IAD for trial of the robbery charges. On November 1, 1990, he entered a plea of not guilty.

Trial was scheduled to begin December 17, 1990. On December 17, 18, and 20, the court conducted hearings on the defendant's June 14 motion to dismiss the state charges. Defendant argued that he had "entered upon a term of imprisonment" upon his arrest on August 9, 1989, and that he thereby became covered by the protections of the IAD. He further argued that the authorities had failed to comply with the notice provisions of § 24–60–501, Article III(c), C.R.S. (1988 Repl.Vol. 10B) of the IAD, and that he had not been brought to trial within 180 days after his December 1989 written request for final disposition, as required by the speedy trial provisions of § 24–60–501, Article III(a), C.R.S. (1988 Repl.Vol. 10B) of the IAD. The trial court agreed and dismissed the action.

The court also granted the prosecutor's request for a stay of defendant's return to Leavenworth pending the People's appeal of the order of dismissal, and the defendant remained in state custody.

Later, the defendant filed a petition for habeas corpus in the United States District Court for the District of Colorado seeking his return to Leavenworth. The Denver district attorney opposed defendant's petition, but the court granted the writ on July 22, 1991, and defendant was returned to Leavenworth.

## II.

■■■ Initially, we note that detainer cases involving a state and the United States are governed by the provisions of the IAD. The United States is a signatory to the IAD and is a "state" for purposes of the agreement. Section 24–60–501, Article II(a), C.R.S. (1988 Repl.Vol. 10B). Further, federal law governs interpretation of the IAD. *Cuyler v. Adams,* 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981); *People v. Higinbotham,* 712 P.2d 993 (Colo.1986).

■■■ The purpose of the IAD is to encourage the expeditious and orderly disposition of the untried charges that are the subject of detainers. Section 24–60–501, Article I, C.R.S. (1988 Repl.Vol. 10B). The rationale underlying these provisions is "that a sentenced prisoner who has entered into the life of the institution to which he has been committed for a term of imprisonment [should] not have programs of treatment and rehabilitation obstructed by numerous absences in connection with successive proceedings related to pending charges in another jurisdiction." *United States v. Wilson,* 719 F.2d 1491 (10th Cir. 1983), quoting *United States v. Roberts,* 548 F.2d 665 (6th Cir.), *cert. denied,* 431 U.S. 920, 97 S.Ct. 2188, 53 L.Ed.2d 232 (1977).

## III.

■■■ Defendant's first contention is that this appeal should be dismissed as moot. Defendant reasons that, since he was returned to federal custody before his trial

on the Denver robbery charges, the "anti-shuttling" provisions of the IAD preclude further prosecution by the State of Colorado. The People argue in opposition that defendant waived his anti-shuttling rights under the IAD when he filed a petition for a writ of habeas corpus seeking his return to Leavenworth Federal Penitentiary. We agree with the People.

The provisions of § 24–60–501, Article III(d), C.R.S. (1988 Repl.Vol. 10B) govern our analysis here. That statute provides in pertinent part:

> If trial is not had on any indictment, information, or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

Known as the "anti-shuttling" provision, this section is intended to avoid the disruptions in a prisoner's rehabilitation occasioned by repeated transfers between jurisdictions. *United States v. Ford*, 550 F.2d 732 (2d Cir.1977), *aff'd sub nom. United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978). Thus, since this provision inures to the prisoner's benefit, it may be waived by him or her. *Gray v. Benson*, 608 F.2d 825 (10th Cir. 1979); *United States v. Ford, supra.*

The protections of the IAD are statutory in nature and are not founded on constitutional rights. Consequently, a valid waiver of IAD rights is not required to be "knowing and intelligent". *Webb v. Keohane*, 804 F.2d 413 (7th Cir.1986).

Waiver is shown by proof that the prisoner has affirmatively requested treatment in a manner contrary to the protections of the IAD. *Yellen v. Cooper*, 828 F.2d 1471 (10th Cir.1987). Thus, in the Tenth Circuit, a defendant's request to be returned to the custody of the sending jurisdiction before final disposition of the outstanding charges against him or her acts as a waiver of the anti-shuttling provision. *Gray v. Benson, supra.*

This is consistent with the views of courts in the majority of circuits which have addressed the issue. *See Crooker v. United States*, 814 F.2d 75 (1st Cir.1987); *United States v. Oldaker*, 823 F.2d 778 (4th Cir.1987); *Webb v. Keohane, supra; United States v. Boggs*, 612 F.2d 991 (5th Cir.1980); *United States v. Black*, 609 F.2d 1330 (9th Cir.1979); and *United States v. Ford, supra.*

Here, the defendant, who was represented by counsel, voluntarily initiated proceedings that had the foreseeable and desired effect of returning him to federal imprisonment by filing a petition for writ of habeas corpus requesting his return to Leavenworth Penitentiary. The People objected to defendant's habeas corpus request on the basis that the anti-shuttling provisions of Article III(d) of the IAD might apply, thereby adversely affecting the People's opportunity to prosecute defendant. Moreover, at the evidentiary hearing on defendant's habeas corpus petition, defendant testified that he had been offered a return to federal custody only if he waived his rights under the IAD; he further indicated that he was unwilling to waive any rights.

Based on these facts, we conclude that defendant's initiation of the habeas corpus action, with full awareness of the possible consequences, both beneficial and adverse, constituted a waiver of Article III(d).

Consequently, the case is not moot, and we will address the issues on the merits.

## IV.

The People contend the trial court erred in determining that defendant, who was in federal custody pending the resolution of parole revocation proceedings, had "entered upon a term of imprisonment" within the meaning of Article III(a) of the IAD, thereby triggering the prompt notice and speedy trial provisions of the IAD. We agree.

## A.

By its terms, the IAD applies only to defendants in custody for a "term of imprisonment." Article III(a) of the IAD

refers to persons who have "entered upon a term of imprisonment in a penal or correctional institution," and § 24–60–501, Article IV(a), C.R.S. (1988 Repl.Vol. 10B) refers to prisoners "serving a term of imprisonment. . . ."

The premier case defining "term of imprisonment" is *United States v. Dobson*, 585 F.2d 55 (3d Cir.1978), *cert. denied*, 439 U.S. 899, 99 S.Ct. 264, 58 L.Ed.2d 247 (1978). In *Dobson*, a parolee was detained for violation of certain federal and state statutes. Although Dobson posted bail, he was held in the state's custody as a technical parole violator. Numerous detainers were filed notifying state authorities of federal charges against the defendant. Dobson moved to dismiss the federal charges on the grounds that his return to state custody following each appearance in federal court violated the Act.

The Third Circuit held that the Act did not apply in situations in which a parolee is confined awaiting a parole revocation hearing. A parolee is not a "prisoner" who is "serving a term of imprisonment." The court reasoned that "term of imprisonment" meant a definable period of time during which a prisoner must be confined in order to complete or satisfy the prison term or sentence which has been ordered. The court concluded that, until a revocation hearing has been held and the parole violator's parole is revoked and he is recommitted, the Act's time limitations do not apply.

Furthermore, detention before a revocation hearing does not allow a detainee to attain any significant interest in the treatment or rehabilitation programs offered by the confining institution and the Act's purpose is not furthered by its application to these situations. *See United States v. Reed*, 620 F.2d 709 (9th Cir.1980) and *Hill v. United States*, 434 A.2d 422 (D.C.1981).

Here, the facts are undisputed that the defendant was detained for parole violations. Therefore, his time spent awaiting a revocation hearing is not a "term of imprisonment" and did not trigger the application of the Act.

## B.

We must next determine the date upon which defendant began his "term of imprisonment" because that date is the "trigger date" for prompt notice and speedy trial computations according to the provisions of the IAD.

*United States v. Wilson, supra*, held that a defendant "has entered upon a term of imprisonment" within the meaning of the IAD on the date of his or her formal entry into the assigned facility to commence serving the sentence. This view of the trigger date for the IAD is consistent with the approach taken in other opinions. *See United States v. Taylor*, 861 F.2d 316 (1st Cir.1988); *Crooker v. United States, supra; United States v. Glasgow*, 790 F.2d 446 (6th Cir.1985), *cert. denied*, 475 U.S. 1124, 106 S.Ct. 1647, 90 L.Ed.2d 191 (1986); and *Lublin v. Johnson*, 628 F.Supp. 1496 (E.D.N.Y.1986).

■■■ We find the analysis followed in these cases to be persuasive. A parole violation detainee cannot avail himself of desirable prison programs until he has been transferred from his temporary holding facility to the facility at which he will serve the remainder of his incarceration. The basic purpose of the IAD is to prevent interference with institutional care and rehabilitation, and one cannot interrupt that which has not yet started. *Crooker v. United States, supra*.

■■■ Accordingly, June 22, 1990, when defendant was received at Leavenworth, is the date to be used for our consideration of the issues concerning the People's compliance with the notice and trial provisions of the IAD.

Pursuant to the IAD, a prisoner who has entered upon a term of imprisonment has the right to request final disposition of the untried charges against him which are the subject of a detainer. The receiving state has 180 days to bring a prisoner to trial, subject to dismissal with prejudice. Section 24–60–501, Articles III(a) & V(c), C.R.S. (1988 Repl.Vol. 10B); *People v. Newton*, 764 P.2d 1182 (Colo.1988).

Defendant was received into temporary custody in Colorado on September 12, 1990. His trial for the Colorado aggravated robbery charges was scheduled to begin on December 17, 1990. This fell within the time limitations set by Article III(a) & IV(c) of the IAD; accordingly, dismissal was not warranted.

## C.

The trial court also erred in concluding that Colorado had violated the IAD's notice requirements. Colorado authorities had lodged a state detainer against defendant six days after the IAD became applicable to him, and on July 16, 1990, defendant was informed both of this detainer and of his right to make a request for final disposition of the underlying charges in compliance with Article III(c) of the IAD. As a practical matter, this advisement to defendant was unnecessary because he already knew of the detainer and had already filed his written request for final disposition which became effective June 22, 1990. Therefore, any delay in defendant's advisement was harmless. *See People v. Higinbotham, supra.*

In summary, we hold that, until June 22, 1990, the date defendant arrived at Leavenworth to serve his sentence following revocation of his federal parole violation, he had not "entered upon a term of imprisonment" and the provisions of the IAD were inapplicable until that time.

The judgment of dismissal is reversed, and the cause is remanded with directions to reinstate the aggravated robbery and mandatory sentence charges against defendant and for such further proceedings as may be appropriate.

REED and MARQUEZ, JJ., concur.