The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

George C. HELMSTETTER,
Defendant–Appellee.

No. 94CA0357.

Colorado Court of Appeals,
Div. II.

Aug. 24, 1995.

Rehearing Denied Sept. 28, 1995.

Certiorari Denied April 15, 1996.

Robert S. Grant, District Attorney, Michael J. Milne, Senior Deputy District Attorney, Brighton, for plaintiff-appellant.

David F. Vela, State Public Defender, Andrew C. Heher, Deputy State Public Defender, Denver, for defendant-appellee.

Opinion by Judge JONES.

The People appeal the district court's dismissal of a one-count information charging aggravated robbery against defendant, George C. Helmstetter. We affirm.

In April 1993, defendant was in the custody of the United States Marshal's office pending the outcome of federal robbery charges. On April 12, 1993, defendant was charged in Adams County Court with one count of aggravated robbery and a warrant was issued for his arrest. Very soon thereafter, the Marshal's office received notification from Adams County of the information and arrest warrant.

On July 28, 1993, defendant pleaded guilty to the robbery charges in federal district court and was sentenced to the United States Bureau of Prisons for a period of 125 months. However, defendant remained in the Federal Correctional Institute in Englewood, Colorado (Englewood), pending his transfer to the Federal Correctional Institute in Florence, Colorado (Florence), which took place about one month later.

On August 9, 1993, the Adams County Court issued a writ of habeas corpus ad prosequendum to the United States Marshal's office ordering that the defendant be produced in Adams County to face the charges against him. On August 19, 1993, the Adams County Sheriff's department took custody of defendant and delivered him to the Adams County Court for an advisement.

Defendant then requested that his case be set for a preliminary hearing within 30 days. A preliminary hearing was set for September 16, 1993, and, upon the conclusion of the advisement, defendant was returned to the custody of the Marshal's office at Englewood.

On September 1, 1993, the Adams County Court issued a second writ of habeas corpus ad prosequendum to the United States Marshal's office ordering that defendant be produced for his preliminary hearing on September 16, 1993. At that time, however, defendant was not in custody at Englewood, but had been transferred to Florence.

The prosecution then cancelled the September writ and lodged a detainer pursuant to Article 4 of the Interstate Agreement on Detainers (IAD), § 24-60-501, C.R.S. (1988 Repl.Vol. 10B), on September 28, 1993.

Defendant filed motions to dismiss the charges in Adams County claiming that his

transfer from federal custody on August 19, 1993, to the Adams County Sheriff's department for an advisement hearing followed by his transfer back to Englewood on the same day violated the "anti-shuttling" provision of the IAD. *See* Section 24–60–501, Article IV(e), C.R.S. (1988 Repl.Vol. 10B). Upon reviewing briefs and hearing arguments, the district court concluded that defendant's rights under § 24–60–501, Article (IV)(e) had been violated and the court, therefore, dismissed the aggravated robbery charge. The prosecution appeals that decision.

The prosecution generally contends that the trial court erred in dismissing the charges against defendant because of an "anti-shuttling" violation under the IAD. We disagree.

■ The purpose of the IAD is to encourage the expeditious and orderly disposition of untried charges pending against incarcerated prisoners. Section 24–60–501, Article I, C.R.S. (1988 Repl.Vol. 10B). The rationale underlying the IAD is that prisoners who have entered into a term of imprisonment should not have programs of treatment and rehabilitation obstructed or delayed by numerous absences resulting from proceedings involving pending charges in other jurisdictions. *United States v. Roberts*, 548 F.2d 665 (6th Cir.1977).

■ As a signatory to the IAD, the United States of America is a "state" for purposes of the agreement. Section 24–60–501, Article II(a), C.R.S. (1988 Repl.Vol. 10B). Furthermore, federal law governs interpretation of the IAD. *Cuyler v. Adams*, 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981); *People v. Higinbotham*, 712 P.2d 993 (Colo.1986). Additionally, the requirements of the IAD are mandatory. *United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978); *Hughes v. District Court*, 197 Colo. 396, 593 P.2d 702 (1979).

■ At issue in this case are the provisions of § 24–60–501, Article IV(e), which provide that:

> If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursu-ant to Article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

This provision, known as the "anti-shuttling" provision, is intended to avoid disruptions to a prisoner's rehabilitation caused by repeated transfers between jurisdictions. *United States v. Ford*, 550 F.2d 732 (2d Cir.1977), *aff'd sub nom. United States v. Mauro, supra.*

## I.

The prosecution first contends that the trial court erred in concluding that a teletype sent by it in April 1993, notifying the federal authorities who had custody of defendant that an information and arrest warrant had been issued for defendant, constituted a detainer for purposes of the IAD. We disagree.

■ The IAD applies only after a detainer based on untried indictments, informations, or complaints has been filed. Section 24–60–501, et seq., C.R.S. (1988 Repl.Vol. 10B). The IAD itself contains no definition of the word "detainer." However, a detainer has been defined as a notification filed with the institution in which a prisoner is serving a sentence, advising that the prisoner is wanted to face pending criminal charges in another jurisdiction. *United States v. Mauro, supra; Dodson v. Cooper*, 705 P.2d 500 (Colo. 1985) *cert. denied*, 474 U.S. 1084, 106 S.Ct. 857, 88 L.Ed.2d 896 (1986).

■ At the hearing regarding defendant's motion to dismiss, the prosecution argued that the teletype delivered to the federal authorities was no more than a notification that Adams County had an arrest warrant out for defendant. The trial court concluded that this was sufficient to act as a detainer for the purposes of the IAD once defendant had started to serve his term of imprisonment.

■■ It is the duty of the appellant to designate those portions of the trial court record which it deems necessary for review on appeal and to see that the record is

properly transmitted. C.A.R. 10(b); *Till v. People,* 196 Colo. 126, 581 P.2d 299 (1978). Furthermore, it is well settled that appellate courts must presume the trial court's findings and conclusions are supported by the evidence when the appellant has failed to provide a complete record on appeal. *People v. Morgan,* 199 Colo. 237, 606 P.2d 1296 (1980).

Here, the prosecution has failed to submit a copy of the teletype which it forwarded to the federal authorities notifying them of the outstanding information and arrest warrant against the defendant. The trial court determined that the teletype was sufficient notification to the federal authorities and constituted a detainer for purposes of the IAD, becoming effective on the date of defendant's sentencing.

Under these circumstances, we conclude that the trial court did not err in determining that the teletype would constitute a detainer for the purposes of the IAD after the defendant was sentenced. *See Romans v. District Court,* 633 P.2d 477 (Colo.1981) (fn. 3).

## II.

■ The prosecution next contends that the trial court erred in dismissing the charges against defendant because there was no violation of the IAD since the defendant had not yet "entered upon his term of imprisonment." We disagree.

Specifically, the prosecution argues that when it issued its first writ of habeas corpus ad prosequendum on August 19, 1993, and gained custody of defendant for one day, but returned him to federal authorities at Englewood on that same day, the provisions of the IAD protecting defendant against "shuttling" were not in effect since defendant had not "entered upon his term of imprisonment" in the assigned facility in which he was to serve his full sentence.

The prosecution cites *People v. Brown,* 854 P.2d 1332 (Colo.App.1992); *United States v. Roberts, supra; United States v. Wilson,* 719 F.2d 1491 (10th Cir.1983); and *Crooker v. United States,* 814 F.2d 75 (1st Cir.1987) to support its theory that a defendant must be physically in the institution to which he has been committed for a term of imprisonment before the provisions of the IAD are applicable. We reject the prosecution's argument regarding *Brown* and *Roberts* since both of those cases involve defendants who were held in the custody of "state" authorities, as defined by the IAD, but were not serving a sentence at the time they wished to invoke the provisions of the IAD.

In *Brown,* the defendant was being held by federal authorities for a parole violation and awaiting a parole revocation hearing when state authorities lodged a detainer against him based upon criminal charges pending in Colorado. The court concluded that as a parolee, the defendant was not a prisoner who was serving a "term of imprisonment" until his parole was revoked, and his sentence was reinstated.

Likewise, in *Roberts,* the federal appellate court concluded that a defendant who was being held in a state detention center because he was unable to make bail in a pending New York charge was not serving a "term of imprisonment" in New York since he had not been tried, convicted, and sentenced.

In this case, after defendant was convicted, he was sentenced on July 28, 1993. Therefore, both *Brown* and *Roberts* are distinguishable and the prosecution's reliance on them is misplaced.

In *Crooker* and *Wilson,* however, the federal appellate courts concluded that, even though the defendants had been sentenced prior to their transportation between state and federal officials for the purpose of arraignment in federal court, the provisions of the IAD were not applicable because the defendants had not yet been taken to the correctional facility in which they were ordered to serve their sentences. Here, we must respectfully disagree with this interpretation of Article IV(e) of the IAD and conclude that the provisions of the IAD became applicable once defendant was sentenced to a term of imprisonment on July 28, 1993.

We note that the IAD refers to "the prisoner's being returned to *the original place of imprisonment* pursuant to Article V(e). . . ." Section 24–60–501, Article IV(e), C.R.S. (1988

Repl.Vol. 10B). (emphasis added) In Article V(e), the IAD states that: "At the earliest practicable time consonant with the purposes of this agreement, the prisoner shall be returned *to the sending state.*" Section 24–60–501, Article V(e), C.R.S. (1988 Repl.Vol. 10B). (emphasis added)

Thus, the plain language of the IAD makes clear that the institution at which the defendant is ordered to serve a sentence is not the express and only place to which a detainer could meaningfully be directed. The drafters of the IAD presumably knew how to indicate that the IAD is applicable only after a defendant enters the institution at which he or she has been ordered to serve a sentence, but chose not to do so. Instead, the IAD applies to prisoners "who [are] serving a term of imprisonment." Section 24–60–501, Article IV(a), C.R.S. (1988 Repl.Vol. 10B).

The general language of the statute, and our duty to apply the statute as written, lead us to conclude that the statute is meant to be interpreted as applying at the time the defendant is sentenced, regardless of the institution at which the defendant is incarcerated subsequent to the sentencing.

Furthermore, we note that the federal appellate courts in *Crooker* and *Wilson* relied on language in the *Roberts* case, but failed properly to reconcile the facts of *Roberts* to their individual cases, such that the rationale of the *Crooker* and *Wilson* cases are flawed.

In the *Roberts* case, the defendant in question, one Williams, was being held in a New York City detention facility because he was unable to make bail as to a pending New York state charge. He had been neither tried, convicted, nor sentenced by the state court. Thus, the court noted that, at that time, he was not serving a term of imprisonment in the state of New York within the meaning of the IAD.

The courts in *Crooker* and *Wilson*, without making reference to these facts of the *Roberts* case, have seized on language within the *Roberts* opinion which seems to indicate that a defendant must have actually entered into the institution at which he or she was ordered to serve his or her sentence, in order for the IAD to be applicable. In referring to

the *Roberts* case, the *Crooker* and *Wilson* opinions ignore the holding therein that states: "We conclude that the [IAD] does not apply to a person who is imprisoned awaiting disposition of pending charges and who has not been *sentenced* to a term of imprisonment." *United States v. Roberts, supra,* at 671. (emphasis added) Those opinions, therefore, have not focused on the central point of *Roberts,* namely, that for the IAD to apply to a defendant, that defendant must have been sentenced.

We determine that the reasoning of *Roberts* serves as a useful basis for our own conclusion that, for purposes of the IAD, a defendant has entered upon a "term of imprisonment" at that time at which he or she is sentenced.

In *Romans v. District Court, supra,* our supreme court held that a defendant had entered a "term of imprisonment" when his final sentence was pronounced, even though the defendant was not transferred to the federal correctional institution where he was to serve his sentence until two months after his sentence was imposed. Likewise, in *Hughes v. District Court, supra,* 197 Colo. at 401, 593 P.2d at 705, our supreme court also held that the date the defendant was sentenced was the date he had started his "term of imprisonment," and "the fact that ... [defendant] had not been transported to his eventual place of imprisonment at the time the detainer was lodged by the Denver Sheriff's office is irrelevant. He was where the federal authorities wished to keep him."

We determine that this interpretation of the applicability of the IAD to a defendant who has been sentenced, but not yet incarcerated in the facility in which he is ordered to serve his sentence, more effectively promotes the purposes of the IAD in encouraging expeditious and orderly disposition of all outstanding charges against a prisoner serving a sentence. In addition, our interpretation of the applicability of the IAD discourages a "state" from holding a prisoner indefinitely in temporary facilities before transferring that prisoner to the facility in which he or she is to serve a "term of imprisonment." Such practices

could prevent a prisoner from benefiting from the provisions of the IAD.

### III.

 Finally, the prosecution contends that a transfer from federal authorities to Adams County authorities and back to federal authorities all within the same day does not violate the IAD. However, we decline to address the prosecution's argument on the merits.

When the prosecution does not raise certain arguments in opposition to a defendant's motion before the trial court, an appellate court will not address those arguments on appeal. *Moland v. People,* 757 P.2d 137 (Colo.1988). In all its motions, briefs, and arguments before the trial court the prosecution failed to oppose defendant's motion to dismiss on the basis that the "anti-shuttling" provision of the IAD was not violated by a one-day transfer. Thus, we decline to address this argument on appeal. *See Moland v. People, supra. See also King v. People,* 785 P.2d 596 (Colo.1990).

Accordingly, the trial court's dismissal of the charges against defendant is affirmed.

CRISWELL and CASEBOLT, JJ., concur.