23CA2061 Matter of Clark Brothers 10-24-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA2061
Colorado Division of Securities
Case No. XY 2022-0001

In the Matter of Jason Ray Clark,

Respondent-Appellant,

v.

Tung Chan, Securities Commissioner,

Petitioner-Appellee.

ORDER AFFIRMED

Division IV
Opinion by JUDGE KUHN
Harris and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 24, 2024

Jason Ray Clark, Pro se

Philip J. Weiser, Attorney General, Robert W. Finke, First Assistant Attorney General, Sarah P.J. Donahue, Assistant Attorney General, Denver, Colorado, for Petitioner-Appellee

¶ 1     In this securities license revocation action, respondent, Jason Ray Clark, pro se, appeals the Colorado Securities Commissioner's final agency order revoking his investment advisor representative license.  We affirm.

## I.     Background

¶ 2     This matter stems from an investigation by the Colorado Division of Securities into Clark and his investment advisor company, Clark Brothers, Inc.[1]  The Division conducted two examinations, the first of which occurred in February 2010.  At the conclusion of the first examination, the Division sent Clark a letter informing him of regulatory deficiencies.  Clark did not respond to that letter, and in September 2010, the Division sent him a second letter.  In February 2013, the Division closed the first examination after Clark agreed to comply with the Colorado Securities Act, sections 11-51-401 to -412, C.R.S. 2024, and the securities rules promulgated thereunder.

---

[1] Clark Brothers, Inc., was previously a party to this appeal; however, it was dismissed after failing to show why it is excepted from the requirement that a domestic entity be represented by an attorney in court proceedings.  *See* § 13-1-127, C.R.S. 2024.  Thus, this appeal relates solely to Jason Ray Clark.

¶ 3    However, Clark did not comply with these requirements. He did not file his required investment advisor forms (ADVs) for the years 2014, 2015, 2016, 2017, and 2018. *See* Div. of Sec. Rule 51-4.3(IA)(G), 3 Code Colo. Regs. 704-1. The Division eventually conducted a second examination in April 2021. After completing the second examination, the Division alleged that Clark failed to disclose or misrepresented material facts to clients in Form ADV filings, including

- multiple tax liens and judgments entered against him;
- discretionary trading practices without first obtaining the required client approval;
- concentrated positions with minimal diversification in contradiction to his disclosed trading strategy;
- advisory fee calculations that differed from those disclosed to investors; and
- the failure to correct misleading advertising and performance claims.

¶ 4    The Division then filed a notice of charges containing the above allegations. An Administrative Law Judge (ALJ) held a two-day hearing on the merits in June 2023. The ALJ concluded

that Clark willfully violated the following Division of Securities Rules: 51-4.3(IA)(F) and (G), 51-4.4(IA)(D), 51-4.6(IA)(A)(5) and (E)(1), 51-4.6(IA)(A)(6), 51-4.6(IA)(A)(15), 51-4.6(IA)(A)(9), 51-4.6(IA)(A)(16), 51-4.6(IA)(A)(18), 51-4.8(IA)(A), 51-4.8(IA)(B), 51-4.8(IA)(J), 51-4.8(IA)(M), 51-4.8(IA)(N), 51-4.8(IA)(P), 51-4.8(IA)(X), 51-4.10(IA)(B)(2)(b)(i) and (ii), and 51-4.12(IA)(A)(6), 3 Code Colo. Regs. 704-1. The ALJ then issued an initial decision revoking Clark's investment adviser representative license.

¶ 5 Clark filed exceptions to the ALJ's initial decision. After reviewing the exceptions, the Commissioner affirmed and adopted the initial decision and revoked Clark's license.

## II. Analysis

¶ 6 Clark raises multiple contentions that we address in turn. He argues that the Commissioner's license revocation order should be reversed because (1) he was selectively prosecuted; (2) the ALJ lacked constitutional decision-making authority; and (3) the

Commissioner's decision was in error.[2] We first address preservation.

## A. Preservation

¶ 7     As an initial matter, the Commissioner contends that the majority of Clark's issues are not preserved for review.[3] We disagree.

¶ 8     "To preserve an issue for appeal, all that is necessary is that the issue 'be brought to the attention of the [lower body] and that the [decision-maker] be given an opportunity to rule on it.'" *Dill v. Rembrandt Grp., Inc.*, 2020 COA 69, ¶ 24 (quoting *Berra v. Springer & Steinberg, P.C.*, 251 P.3d 567, 570 (Colo. App. 2010)). "We do not require that parties use 'talismanic language' to preserve particular arguments for appeal." *People v. Melendez*, 102 P.3d 315, 322

---

[2] Clark's last contention challenges the Commissioner's ultimate conclusions and findings on the grounds that (1) he cured all of the challenged deficiencies; (2) he did not willfully violate any Colorado securities statute; and (3) there was no harm to the public. These subparts are all a challenge to the merits of the Commissioner's decision, and thus we address them together.

[3] We note that Clark failed to include a statement of preservation for his issues. However, we have "an independent, affirmative duty to determine whether a claim is preserved." *People v. Tallent*, 2021 CO 68, ¶ 11.

(Colo. 2004) (quoting *People v. Syrie,* 101 P.3d 219, 223 n.7 (Colo. 2004)).

¶ 9 The Commissioner first argues that Clark failed to allege specific instances of prosecutorial misconduct, citing *Lanphier v. Department of Public Health & Environment,* 179 P.3d 148, 151-52 (Colo. App. 2007) (confirming the need for specificity in exceptions).[4] The Commissioner's argument is misplaced.

¶ 10 We agree that exceptions must specifically mention the ruling that a party contends is erroneous. *See Colo. State Bd. of Med. Exam'rs v. Thompson,* 944 P.2d 547, 550 (Colo. App. 1996) ("[S]ince these exceptions did not mention the ALJ's ruling on respondent's motion for a continuance, we conclude that he has waived any contention of error in the denial of the request for continuance."); *see also Lanphier,* 179 P.3d at 152.

¶ 11 However, Clark's selective prosecution contentions do not challenge a specific ALJ ruling. Instead, they generally challenge the Division's choice to seek enforcement against him at all. Clark

---

[4] We presume that the Commissioner meant selective prosecution, as Clark does not bring a prosecutorial misconduct claim.

preserved this issue for review by raising it to the Commissioner in his exceptions.[5]  *See Dill*, ¶ 24.

¶ 12     Turning to Clark's constitutional argument, the Division admits that he raised this issue in his exceptions.  Even if that weren't the case, an ALJ may not rule on the constitutionality of the agency's enabling statutes.  *Colo. Dep't of Pub. Health & Env't v. Bethell*, 60 P.3d 779, 785 (Colo. App. 2002).  Thus, we conclude Clark's constitutional contention is also preserved for review.  *See Dill*, ¶ 24.

¶ 13     For Clark's third contention, the Commissioner argues that Clark did not dispute the ALJ's finding of willfulness on four specific rules and failed to challenge the other rule violations with specificity.  We agree that Clark did not specifically list the rules that he challenges.  However, we also recognize that he is a pro se litigant and that "[p]leadings by pro se litigants must be broadly construed to ensure that they are not denied review of important issues because of their inability to articulate their argument like a

---

[5] To the extent that the Commissioner argues that Clark's selective prosecution claims are not detailed or supported by the record, those arguments go to the merits, not preservation.

lawyer." *Johnson v. McGrath*, 2024 COA 5, ¶ 10 (quoting *Jones v. Williams*, 2019 CO 61, ¶ 5).

¶ 14    Construing Clark's exceptions broadly, he challenged all of the ALJ's findings that he acted willfully. He raised this issue before the Commissioner, giving her the opportunity to review it. This was sufficient to preserve his claim for review. *See Dill*, ¶ 24.

¶ 15    The Commissioner admits that Clark preserved his remaining arguments, and we agree.

### B.    Selective Prosecution

¶ 16    Clark contends that he was subject to selective prosecution and argues that, as a result, his securities license should be restored. We disagree.

¶ 17    Selective prosecution is an equal protection claim. Equal protection, in this context, requires "that a decision to prosecute not be based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'" *People in Interest of T.B.*, 2016 COA 151M, ¶ 66 (quoting *United States v. Armstrong*, 517 U.S. 456, 464-65, (1996)), *aff'd*, 2019 CO 53. "A selective-prosecution claim is not a defense on the merits to the . . . charge itself, but an independent assertion that the prosecutor has brought the charge

7

for reasons forbidden by the Constitution." *Armstrong*, 517 U.S. at 463.[6]

¶ 18    Clark argues that he was singled out compared to other investment advisors and that this matter was brought as retaliation after he "sued the CDS, SEC, FINRA, CO AG, Schwab, Charles Schwab himself, and all the Board of Directors of Schwab."[7] Because of this, he argues that his license should be restored. But this is not enough to prevail on his claim. As noted, a selective prosecution claim is not a defense to the charged conduct; instead, it is a separate assertion that the charged conduct has been brought in violation of "the equal protection component of the Due Process Clause of the Fifth Amendment." *Id.* at 464. To prevail, Clark would have to present clear evidence that the prosecution had

---

[6] We note that Clark does not provide a standard of review and the Commissioner — applying criminal prosecutorial misconduct law — argues that a plain error standard should apply. However, Clark has not brought a prosecutorial misconduct claim, so the Commissioner's argument is misplaced. Regardless, we do not need to determine the ultimate standard of review in this matter as Clark's contention fails under any standard.

[7] We note that Clark does not further identify the parties to the lawsuit or explain when it occurred, the outcome, the case number, or what court it occurred in.

a discriminatory effect and was motivated by a discriminatory purpose. *See T.B.,* ¶ 66.

¶ 19 Clark does not pass this test. He does not assert that he has a protected status, that the license revocation had a discriminatory effect, or that the license revocation was undertaken with a discriminatory intent. And he does not point to anything else in the record demonstrating an equal protection violation. Even construing his briefing broadly, Clark does not make a colorable claim of selective prosecution; instead, he simply asserts that it occurred with no legal or factual support.

¶ 20 Thus, we conclude that Clark has not demonstrated selective prosecution in the license revocation proceedings.[8]

### C. Decision-Making Authority

¶ 21 Clark next contends that ALJs lack the constitutional authority to make binding legal decisions. We disagree.

---

[8] To the extent that Clark intended to argue a vindictive prosecution claim, he does not develop an argument in that regard. Thus, we don't consider it. *See Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC,* 2020 COA 34, ¶ 41 n.12, *aff'd,* 2021 CO 56.

¶ 22     We review de novo a challenge to a statute's constitutionality. *E-470 Pub. Highway Auth. v. Revenig*, 91 P.3d 1038, 1041 (Colo. 2004). However, such a challenge faces a very high bar. "Because we respect the roles of the legislative and executive branches, we presume that statutes are constitutional . . . ." *Woldt v. People*, 64 P.3d 256, 266 (Colo. 2003). By "challenging the constitutionality of a statute[, Clark] bears a heavy burden of proving the statute unconstitutional beyond a reasonable doubt." *People v. Vasquez*, 84 P.3d 1019, 1022 (Colo. 2004) (quoting *People v. Bossert*, 722 P.2d 998, 1002 (Colo. 1986)).

¶ 23     In support of his challenge, Clark cites the following United States Supreme Court cases: *Lucia v. Securities & Exchange Commission*, 585 U.S. 237, 244 (2018); *Axon Enterprise, Inc. v. Federal Trade Commission*, 598 U.S. 175, 180 (2023); *Securities & Exchange Commission v. Cochran*, 20 F.4th 194 (5th Cir. 2021), *cert. granted*, 142 S. Ct. 2707 (U.S. May 16, 2022) (No. 21-1239), and *aff'd sub nom. Axon Enter.*, 598 U.S. at 180; *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477, 484 (2010); and *Securities & Exchange Commission v. Jarkesy*, 603 U.S. ___, ___, 144 S. Ct. 2117, 2139 (2024). He argues that these cases

10

mean that ALJs cannot make legally binding decisions because they are not part of the United States judicial system.

¶ 24 Contrary to his assertion, none of the above cases stand for this proposition. The most relevant of these cases is *Jarkesy*, which addresses "a straightforward question" and holds that "the Seventh Amendment entitles a defendant to a jury trial when the SEC seeks civil penalties against him for securities fraud." 603 U.S. at ___, 144 S. Ct. at 2127. At the heart of *Jarkesy*'s analysis was the distinction between law and equity and the fact that the SEC sought civil penalties in the form of monetary relief, a prototypical legal remedy. *See id.* at 2129. However, Clark's case is distinguishable as it was not brought by the SEC, it is not a fraud suit, and the Division is not seeking monetary relief. Thus, *Jarkesy* is not applicable to this matter.

¶ 25 Likewise, *Lucia* only addresses a single unrelated question: "whether the [Securities and Exchange] Commission's ALJs are 'Officers of the United States' or simply employees of the Federal Government." 585 U.S. at 244. The *Lucia* court concluded that "the Commission's ALJs are 'Officers of the United States,' subject

11

to the Appointments Clause." *Id.* at 251. This case does not implicate the constitutionality of Colorado's ALJs.

¶ 26    In *Axon Enterprise,* the Supreme Court explicitly stated that it wasn't resolving whether agencies' actions are unconstitutional. 598 U.S. at 180 ("They maintain in essence that the agencies, as currently structured, are unconstitutional in much of their work. Our task today is not to resolve those challenges; rather, it is to decide where they may be heard."). By its own text, *Axon Enterprise* does not apply to Clark's assertion, let alone Colorado's agencies.

¶ 27    Finally, *Free Enterprise Fund* addressed multilevel employment protections of inferior federal government officers and whether they could be removed under similar restrictions to the principal officers they served under. 561 U.S. at 483. The Supreme Court determined that this specific multilevel protection "is contrary to Article II's vesting of the executive power in the President" because "[t]he President cannot 'take Care that the Laws be faithfully executed' if he cannot oversee the faithfulness of the officers who execute them." *Id.* at 484 (quoting U.S. Const. art. II, § 1, cl. 1). This case is also inapplicable to Clark's broad challenge to the constitutionality of Colorado's ALJs.

¶ 28    The matter before us is a Colorado securities license revocation action brought under section 11-51-410(1)(b), C.R.S. 2024.  Colorado law expressly permits ALJs to conduct hearings, such as the one that occurred in this matter.  *See* § 24-4-105(3)-(4), C.R.S. 2024.  And other divisions of this court have specifically noted that ALJs have this authority.  *See* W. *Colo. Cong. v. Colo. Dep't of Health*, 844 P.2d 1264, 1266 (Colo. App. 1992) ("At a hearing only one of the following may preside: The agency, an administrative law judge from the division of administrative hearings, or, if otherwise authorized by law, a hearing officer who if authorized by the law may be a member of the body which comprises the agency." (quoting § 24-4-105(3), C.R.S. 1988)).

¶ 29    Clark does not make any specific arguments about the constitutionality of section 24-4-105.  Instead, he generally challenges the overall constitutionality of ALJs and administrative decision-making.  But as noted above, the cases Clark cites do not support his argument.  Thus, Clark has not carried his burden to show the statute authorizing a state ALJ to hear this matter is unconstitutional.

## D.   The License Revocation Decision

¶ 30   Lastly, Clark challenges the Commissioner's ultimate conclusions and findings on the grounds that (1) he cured all of the deficiencies; (2) he did not willfully violate any Colorado securities statute; and (3) there was no harm to the public.

### 1.   Standard of Review and Applicable Law

¶ 31   Section 24-4-106(7), C.R.S. 2024, sets forth the standard of review for agency actions.  On review, we will affirm the agency's decision unless it is arbitrary or capricious, unsupported by the evidence in the record, or contrary to law.  *See Coffman v. Colo. Common Cause,* 102 P.3d 999, 1005 (Colo. 2004); § 24-4-106(7)(a) ("If the court finds no error, it shall affirm the agency action.").

¶ 32   "When reviewing final agency actions, we . . . must examine the record in the light most favorable to the agency's decision. Whether the record contains substantial evidence to support the agency decision is a question of law." *Rigmaiden v. Colo. Dep't of Health Care Pol'y & Fin.,* 155 P.3d 498, 501 (Colo. App. 2006).

¶ 33   The purposes of the Colorado Securities Act "are to protect investors and maintain public confidence in securities markets while avoiding unreasonable burdens on participants in capital

markets." § 11-51-101(2), C.R.S. 2024.  Under this act, the
Commissioner may revoke a license if the licensed person "[h]as
willfully violated or willfully failed to comply [with the act]."
§ 11-51-410(1)(b).  This includes a failure to provide clients with
mandatory disclosures and engaging in "conduct contrary to one or
more rules wherein the securities commissioner prohibits dishonest
or unethical conduct in connection with providing investment
advisory services."  § 11-51-410(1)(*l*)(I)-(II).

### 2.    Presentation of the Transcripts

¶ 34    As an initial matter, Clark has not provided us with the
transcript from his hearing before the ALJ.  As the appellant, Clark
is the moving party seeking to set aside the Commissioner's final
decision.  "It is incumbent upon the moving party to designate all
those portions of the record necessary for the appeal."  *Hock v. N.Y.
Life Ins. Co.*, 876 P.2d 1242, 1252 (Colo. 1994); C.A.R. 10(d)(3) ("The
appellant must include in the record transcripts of all proceedings
necessary for considering and deciding the issues on appeal.").

¶ 35    Because Clark didn't designate the transcripts necessary to
decide the appeal, we review his contentions under the "well settled
[law] that appellate courts must presume the [lower body's] findings

15

and conclusions are supported by the evidence when the appellant has failed to provide a complete record on appeal." *People v. Helmstetter*, 914 P.2d 474, 477 (Colo. App. 1995); *Hock*, 876 P.2d at 1252. Thus, we must presume that the transcripts would support the ALJ's factual findings and evidentiary conclusions. We now turn to Clark's contentions that the Commissioner erred.

### 3. The Commissioner's Decision Was Not Arbitrary or Capricious

¶ 36 Clark argues that, as a matter of fact, he did not willfully violate the securities rules or ignore the alleged deficiencies. We perceive no error.

¶ 37 In support of this argument, Clark first points us to a September 2022 Financial Industry Regulatory Authority (FINRA) arbitration award. This arbitration stemmed from Clark's claims against Charles Schwab & Co., Inc.[9] for prima facie defamation of character, emotional distress, breach of contract, breach of fiduciary duty, tortious interference with contract, competition laws violations, and antitrust laws violations. The FINRA arbitration

---

[9] Clark says that other entities and individuals were party to the FINRA arbitration, but the record before us lists only Charles Schwab & Co., Inc.

panel denied Clark's claims in their entirety, finding that he had failed to prove any of them.

¶ 38     Despite the decision against him, Clark points to a statement within the FINRA award where the panel said that "there is no evidence that Mr. Clark did anything dishonest or dishonorable." He asserts this proves that, during the Division's enforcement action, the ALJ erred in finding that he acted willfully or dishonestly in violating the securities rules.  His argument is misplaced.

¶ 39     The FINRA arbitration occurred almost a year before the ALJ's initial decision and resulted from a separate civil dispute between Schwab and Clark.  We agree with the ALJ's analysis that "a FINRA arbitration panel has no authority to enforce the Colorado Securities Act, and its statements are not binding on the courts and agencies who do."  The FINRA arbitration is inapplicable to this matter.

¶ 40     Clark next argues that the ALJ's findings that he acted willfully and failed to cure deficiencies are wrong because it "is a fact" that all deficiencies "were 100% cured," and he didn't "willfully ignore[] CDS deficiencies."  It's true that these are factual findings. But because Clark failed to provide us with the transcripts of the

underlying hearing, we *must* presume that the ALJ's findings and conclusions against him "are supported by the evidence." *Helmstetter*, 914 P.2d at 477; *Hock*, 876 P.2d at 1252. Thus, we have no basis to disturb the ALJ's findings of fact on this point.

¶ 41 Finally, Clark also argues that the Commissioner's conclusion that revoking his securities license serves the public's interest "is absolute total and complete BS." We disagree. The record before us demonstrates that the Division has sought Clark's compliance with securities laws and rules for over a decade. The ALJ found that Clark violated over fifteen rules and that Clark "cannot be relied upon to follow these rules in the future." Additionally, the ALJ found that Clark "reject[s] regulation by the Commissioner and [is] unlikely to conform to the rules of the Commissioner in the future." These are also factual findings, and thus, we must presume they are supported by the missing transcripts. *See Helmstetter*, 914 P.2d at 477.

¶ 42 The ALJ ultimately concluded that "[r]evocation of [Clark's] license[] is the only responsible sanction." In turn, the Commissioner adopted that determination and concluded that revoking Clark's license was in the public interest. We perceive no

error in this conclusion. Terminating the license of an investment advisor who is unable to comply with the Colorado Securities Act and associated rules for more than a decade serves the public interest.

¶ 43 Given this record, the Commissioner's decision to revoke Clark's license was not arbitrary or capricious, unsupported by the evidence, or contrary to law.

### III. Disposition

¶ 44 The Commissioner's final order is affirmed.

JUDGE HARRIS and JUDGE YUN concur.