## 20491

The STATE, Respondent, v. Ambry DeWitt ALLEN, Jr., Charles Waymon Patrick and Daniel Warren, of whom Ambry DeWitt Allen, Jr. and Charles Waymon Patrick are, Appellants.

(237 S. E. (2d) 64)

*C. Rauch Wise,* of Greenwood, *for Appellants.*

*Daniel R. McLeod, Att. Gen., Joseph R. Barker and Richard P. Wilson, Asst. Attys. Gen.,* of Columbia, and *William T. Jones, Sol.,* of Greenwood, *for Respondent.*

August 15, 1977.

LEWIS, Chief Justice.

Appellants Ambry DeWitt Allen, Jr., and Charles Waymon Patrick were charged, along with Daniel Warren, with the commission of a burglary in Abbeville County, South Carolina, during which the owner of the home was shot. They have appealed from their subsequent conviction and sentence to imprisonment for life. The exceptions charge error (1) in the refusal to dismiss the indictment because of the alleged failure to grant a speedy trial, (2) in the refusal

to grant a severance, (3) in the admission of certain evidence, and (4) in failing to conduct an evidentiary hearing into the charge, made during the trial, of ineffective assistance of counsel.

The first issue concerns the contention that the trial court erred in failing to dismiss the indictment with prejudice because of the alleged failure to grant a speedy trial.

The burglary in South Carolina occurred on October 11, 1973. On October 24, 1973, thirteen days later, appellants were arrested on bank robbery charges in the State of Georgia, for which they were subsequently convicted and committed to the Georgia Department of Corrections.

Arrest warrants were issued for appellants in this State in November 1973. They were indicted by the grand jury in September 1975, at which time they were first brought back to South Carolina and first notified of the charges pending in this State. However, upon motion of appellants, a continuance of the trial beyond the September 1975 term was granted and appellants were returned to the State of Georgia. Thereafter, they were again brought into South Carolina and were tried in March 1976.

The allegation that appellants were denied their right to a speedy trial is based upon two grounds. First, it is argued that appellants were dened the right to a speedy trial because of the unexplained delay of approximately twenty-two (22) months between the issuance of the arrest warrants in November 1973 and the service of the warrants in September 1975; and, second, because of the return of the appellants to the State of Georgia without trial of the charges against them in violation of the provisions of the Interstate Agreement on Detainers, Section 17-11-10 *et seq.* of the 1976 Code of Laws.

The delay in this case fails to sustain the claim of appellants that they were denied their right to a speedy trial. Their right to a speedy trial attached in Sep-

tember 1975, at the time the arrest warrants were served; and not in November 1973 when the warrants were issued, as contended by appellants. *United States v. Marion,* 404 U. S. 307, 92 S. Ct. 455, 30 L. Ed. (2d) 468. In *Marion,* the United States Supreme Court declined to extend the reach of the speedy trial provisions of the Sixth Amendment to the period prior to arrest, stating:

. . . it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment.

The period between the service of the arrest warrants and trial in this case was about six (6) months. This interval of delay fails to support the claim that the right to a speedy trial was denied. In any event, appellants at no time demanded a speedy trial but, on the contrary, requested and obtained a continuance in September 1975 when the State was ready for trial. Such action amounts to a waiver of their right to now contend that they were deprived of the right to a speedy trial of the charges against them. *Wheeler v. State,* 247 S. C. 393, 147 S. E. (2d) 627; *State v. Sarvis,* 265 S. C. 144, 217 S. E. (2d) 38.

Assuming however that the speedy trial provision of the Sixth Amendment attached at the time the arrest warrants were issued in November 1973, there is no showing that the delay caused any impairment of the ability of appellants to defend themselves.

Appellants' additional contention, that the trial court erred in refusing to dismiss the indictment against them because they were returned to Georgia in September 1975 without a trial of the charges against them, involves a consideration of the Interstate Agreement on Detainers, Section 17-11-10, supra, particularly Articles IV(c) and IV(e) of that statute.

These sections are as follows:

IV (c) In respect to any proceedings made possible by this Article, trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

IV (e) If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Article V (e) hereof, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

Article V (e), referred to in Article IV (e), states: "At the earliest practical time consonant with the purposes of this agreement, the prisoner shall be returned to the sending state."

Appellants were brought from Georgia, where they were serving a prison term, to South Carolina in September 1975 for trial. The State was ready for trial but the trial was continued beyond the term of court at the request of appellants' counsel. Since the trial had been so continued, appellants were returned to the State of Georgia. Appellants contend that the lower court should have granted their motion to dismiss the indictment since they were not tried before their return to Georgia, relying upon the quoted provisions of Section IV (e). There is no merit in this contention.

The provision in Section IV (e), for dismissal of an indictment where a prisoner is returned to the original place of imprisonment without a trial, has no application when, as here, the State is ready for trial and the prisoner requests and obtains a continuance. The purpose of the Interstate Agreement on Detainers is, as stated in Article I of Section 17-11-10, supra, to encourage and effectuate

"the expeditious and orderly disposition" of charges outstanding against prisoners detained in other jurisdictions so as to eliminate "uncertainties which obstruct programs of prisoner treatment and rehabilitation." This purpose is promoted by requiring the receiving State to expeditiously proceed to a trial of the case. However, the statute assumes that the prisoner wants a speedy disposition of his case and is not seeking a continuance.

Where a prisoner seeks and obtains a delay of his trial in the receiving State and is returned to the sending State to await trial, it does not mean that he waives his constitutional right to a speedy trial, but it does remove his case from the scope of the automatic dismissal provisions of the statute. In the absence of a showing of prejudice from his return to the sending State after his request for a continuance is granted, the prisoner would not be entitled to a dismissal of the charges against him, as a matter of right, under the provisions of the statute.

The record in this case fails to show any prejudice to appellants from their return to Georgia to await trial, after the trial of the present charges was continued at their request. The trial judge, therefore, properly refused appellants' motions to dismiss the indictments in this case because of the alleged failure to grant a speedy trial.

Appellants also complain of the refusal by the trial court to grant their motion for severance. The motion was made upon the ground that they desired to call their codefendant, Daniel Warren, to testify as to how certain incriminating evidence taken from appellant Allen's car came to be there.

The granting of a motion for severance is within the discretion of the trial judge and his ruling on such a motion will not be disturbed on appeal unless an abuse of discretion is shown. *State v. Allen,* 266 S. C. 175, 222 S. E. (2d) 287.

We held in *State v. Crowe*, 258 S. C. 258, 188 S. E. (2d) 379:

A defendant is not entitled, as a matter of right, to a separate trial in order to make a codefendant available to testify. . . . And in order to justify a reversal on the foregoing ground, some prejudice arising out of the joint trial must be shown.

The record in this case fails to show what the testimony of the codefendant would be and, therefore, whether it would exculpate the appellants. Neither is there any showing that any defenses of the codefendants were antagonistic. Under these facts, we find no abuse of discretion in the denial of the motion for severance. *State v. Crowe,* supra.

Appellants' exceptions to rulings relative to the admissibility of testimony require a brief statement of the facts presented by the State.

The home of Mr. and Mrs. Huckabee was burglarized. In the early morning hours of the night of the burglary, Mr. Huckabee went outside to investigate a noise. When he reached the yard of his home he was shot with a shotgun and, when he fell to the ground, was brutally kicked by the burglars. Mr. Huckabee survived and testified that he recognized the leader of the burglars, by his voice and physical appearance, as appellant A. D. Allen, a man whom he had previously known in Georgia. Mrs. Huckabee also stated that she knew Allen in Georgia and identified him by his voice, and later gave his name to the sheriff as one of the burglars. Mr. Huckabee described a blonde wig worn by a person fitting appellant Patrick's description, whom he referred to from the beginning as Patrick. There was also testimony that one of the burglars wore a ski mask.

After the robbery, among other items, Mr. Huckabee's pistol and binoculars were missing.

Upon the subsequent arrest of Allen and Patrick in Georgia, the pistol was found in the automobile occupied by them and was admitted into evidence without objection. A pair of tennis shoes was taken from Allen at the time of his arrest and were matched by an expert with a moulage of footprints at the scene of the burglary.

Subsequently a Federal search warrant was issued authorizing a search of Allen's 1970 Ford for U. S. currency, ski masks, wig, shotguns, pistols, money bags of the bank of Molina, maps, walkie-talkies, cotton gloves, coin containers, and other fruits and instrumentalities of the crime of armed robbery. The items found in the 1970 Ford were inventoried by the Georgia police officers and the list contained two homemade masks and four ski masks, a wig, an unexpended 16 gauge shell, and binoculars.

The masks, binoculars, wig, and unexpended shell, obtained in the search of the 1970 Ford, and the tennis shoes taken from Allen at the time of his arrest, were admitted into evidence.

Appellants contend that these items were inadmissible, either because irrelevant or because they were not specifically listed in the Federal search warrant under which the items were seized. We find no merit in this contention. Ski masks were listed in the search warrant and was sufficient to cover the masks obtained in the search. There was testimony that the burglars wore some covering over their faces, one a ski mask. The shoes were taken from Allen's person and were, therefore, not within the objection. The warrant listed "shotguns" and would include ammunition. The unexpended shell was matched with an expended shell found at the scene of the burglary. The appellants were under suspicion of bank robbery and the binoculars could have been an instrumentality used to "case" the bank prior to the crime. They were definitely identified as owned by Mr. Huckabee from whose possession they were removed on the night of the burglary.

The items of evidence in question were relevant and there was sufficient nexus between them and the criminal activity of armed robbery to sustain their seizure under the Federal warrant. The discretion of the trial judge was properly exercised in admitting these items into evidence.

In any event, however, the overwhelming proof of guilt rendered harmless the admission of the evidence in question. The positive identification of appellant Allen by the victims, the possession of the stolen gun by appellants, the wig obtained pursuant to the search warrant and admitted without objection, and the walkie-talkie admitted without objection rendered any verdict other than guilty most unlikely.

The final question is based upon the charge that the trial judge erred in failing to conduct an evidentiary hearing into the alleged lack of communication between appellant Allen and his counsel. At the close of the State's case, appellant stated to the court that he had "not been fully afforded representation" because he was having difficulty communicating with his counsel. At the time appellant made the foregoing charge, the trial judge had the benefit of his own observations of the conduct of appellant's defense and the facts regarding any lack of attorney-client communication. Upon the basis of these observations, the trial judge found that the charge of ineffective assistance of counsel and lack of communication between appellant and his counsel had no basis in fact and proceeded with the trial.

Whether or not a charge during trial of ineffective assistance of counsel warrants an immediate evidentiary hearing is a matter concerning the course and conduct of the trial and is left largely to the discretion of the trial judge. This Court will not interfere in such matters unless it clearly appears that the rights of the complaining party were prejudiced. There is no such showing in this case.

Judgment affirmed.

LITTLEJOHN, NESS, RHODES and GREGORY, JJ., concur.