The **PEOPLE** of the State of Colorado,
Plaintiff–Appellee,

v.

Efrain Torres **REYES**, Defendant–
Appellant.

No. 05CA0423.

Colorado Court of Appeals,
Div. I.

May 31, 2007.

Rehearing Denied June 28, 2007.

Certiorari Granted Jan. 15, 2008.

John W. Suthers, Attorney General, Robert A. Chappell, Special Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Walter L. Gerash Law Firm, P.C., Walter L. Gerash, James F. Scherer, Denver, Colorado, for Defendant–Appellant.

**Opinion by Judge ROY.**

Defendant, Efrain Torres Reyes, appeals the judgment of conviction entered upon jury verdicts finding him guilty of three counts of first degree kidnapping, a class 1 felony, § 18–3–301, C.R.S.2006; two counts of sexual assault, a class 2 felony, § 18–3–402(1)(a), C.R.S.2006; one count of second degree kidnapping, a class 2 felony, § 18–3–302(1), C.R.S.2006; two counts of sexual assault on a child, a class 3 felony, § 18–3–405, C.R.S. 2006; one count of first degree burglary, a class 3 felony, § 18–4–202, C.R.S.2006; two counts of aggravated robbery, a class 3 felony, § 18–4–302, C.R.S.2006; two counts of second degree sexual assault on a child victim, a class 4 felony, § 18–3–402(1)(d), C.R.S. 2006; three counts of felony menacing, a class 4 felony, § 18–3–206(1), C.R.S.2006; three counts of third degree assault, a class 1 misdemeanor, § 18–3–204, C.R.S.2006; a crime of violence (bodily injury) sentence enhancer, § 18–1.3–406, C.R.S.2006; and a crime of violence (use of deadly weapon) sentence enhancer, § 18–1.3–406(3), C.R.S. 2006.

These charges arose out of a home invasion in which defendant and an accomplice sought to steal a large amount of cash they believed to be kept there. In the course of the invasion, the occupants were beaten, terrorized, and a ten-year-old daughter was raped and sodomized by defendant. Ultimately, the victims gave defendant and the accomplice a large sum of cash which was kept at a place of business.

Defendant was sentenced to the Department of Corrections for three consecutive life terms plus forty-eight years.

The only issues presented on appeal relate to alleged violations of the Interstate Agreement on Detainers (IAD), § 24–60–501, C.R.S.2006, which defendant maintains require dismissal of all charges with prejudice. We disagree and affirm the judgment.

### I. Standard of Review

 We review statutory interpretation de novo. In construing statutes, our primary task is to ascertain and give effect to the intent of the legislature. To do so, we must look first to the statutory language. When that language is clear and unambiguous, there is no need to resort to interpretative rules of statutory construction, and we must apply the words according to their commonly accepted and understood meaning. *People v. Robertson,* 56 P.3d 121, 123 (Colo.App.2002) (citing *Moody v. Corsentino,* 843 P.2d 1355, 1370 (Colo.1993)). In addition, "[w]e construe statutory and constitutional provisions as a whole, giving effect to every word and term contained therein, whenever possible." *Bd. of County Comm'rs v. Vail Assocs., Inc.,* 19 P.3d 1263, 1273 (Colo.2001).

### II. The Interstate Agreement on Detainers

 The IAD is a congressionally sanctioned interstate compact that governs the disposition of interstate detainers, which are filed by a compact state that has charges pending against a person imprisoned in another compact state. Section 24–60–501, Art. I; *Johnson v. People,* 939 P.2d 817, 818–19 (Colo.1997). A detainer is "a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction." *People v. Moody,* 676 P.2d 691, 693 n. 2 (Colo.1984) (quoting *United States v. Mauro,* 436 U.S. 340, 359, 98 S.Ct. 1834, 1846, 56 L.Ed.2d 329 (1978)). The United States is a signatory to the IAD and is a "state" for purposes of the agreement. Section 24–60–501, Art. II(a); *People v. Brown,* 854 P.2d 1332, 1334 (Colo.App. 1992). Federal law governs interpretation of the IAD. *People v. Hines,* 817 P.2d 559, 560 (Colo.App.1991).

 The purpose of the IAD is "to encourage the expeditious and orderly disposition of [pending] charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints." Section 24–60–501, Art. I. The underlying rationale for the IAD is "that a sentenced prisoner who has entered into the life of the institution to which he has been committed for a term of imprisonment [should] not have programs of treatment and rehabilitation obstructed by numerous absences in connection with successive proceed-

ings related to pending charges in another jurisdiction." *People v. Brown, supra,* 854 P.2d at 1334 (quoting *United States v. Wilson,* 719 F.2d 1491, 1494 (10th Cir.1983)).

█ The operative provisions of the IAD are contained in Articles III and IV. Article III provides a procedure by which a prisoner must be promptly informed of the source and content of a detainer lodged against him and of his right to request final disposition of the charges on which the detainer is based. Section 24–60–501, Art. III(c). A defendant's charges may be dismissed with prejudice for violation of the prompt notification provision unless the prosecution demonstrates that the violation did not prejudice the defendant. *People v. Higinbotham,* 712 P.2d 993, 998 (Colo.1986) (delay of forty-two days was not prompt notification). If the prisoner requests the final disposition of the charges, he or she must be brought to trial within 180 days of the request unless a continuance is granted for good cause shown. Section 24–60–501, Art. III(a).

Article IV sets forth procedures by which a prosecutor who has filed a detainer can obtain the prisoner's presence for the purpose of trial on the charges upon which the detainer is based. Section 24–60–501, Art. IV(a)-(c). Trial must commence within 120 days of the defendant's arrival in the receiving state unless a continuance is granted for good cause shown. Section 24–60–501, Art. IV(c); *see generally People v. Bost,* 770 P.2d 1209, 1214 (Colo.1989).

### III. Prompt Notification

Defendant first asserts that because he was not promptly notified of the filing of detainers, as required by § 24–60–501, Art. III(c), the IAD mandates dismissal of his charges. We disagree.

Article III(c) of the IAD, the notification provision, states:

> The warden, commissioner of corrections, or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final dispo-

sition of the indictment, information, or complaint on which the detainer is based. Section 24–60–501, Art. III(c).

Defendant was arrested in New Mexico for, among other things, federal firearms violations on January 12, 2000. He ultimately pleaded guilty to a firearms violation and was sentenced on January 15, 2002, to a term of eighty-four months and three years of supervisory release. In the interim, he was held in detention facilities under the control of the Office of the United States Marshal for the United States District Court for the District of New Mexico (U.S. Marshal). Following sentencing, he remained in New Mexico in the custody of the U.S. Marshal until June 26, 2002, when he was transferred to the custody of the United States Bureau of Prisons at the United States Penitentiary Florence (USP Florence).

The Colorado charges were filed, and a warrant for defendant's arrest was authorized, on April 2, 2001. Arapahoe County lodged detainers against defendant prior to his sentencing on May 4, 2001 (first detainer), and again on January 2, 2002 (second detainer).

Upon his arrival at USP Florence on June 26, 2002, defendant was notified of a detainer filed against him on immigration issues. On July 12, 2002, a detainer (third detainer) was lodged against defendant because of an outstanding state warrant based on the Colorado charges, and defendant was informally notified of the detainer on the same day.

On December 31, 2002, defendant was formally notified by the authorities at USP Florence and acknowledged in writing that he received information about the detainer and had been advised of his rights under the IAD, including his right to request immediate disposition of the charges. There is no indication in this record that defendant ever requested an immediate disposition of the pending charges before or after being formally advised, and defendant has not argued that he made such a request.

Defendant made his first appearance in Arapahoe County District Court on August 28, 2002, and subsequently appeared six additional times before he was formally notified

of the detainer on December 31, 2002. All defendant's transfers from USP Florence were obtained by writs of habeas corpus ad prosequendum (habeas writ) issued by Arapahoe County.

In *People v. Higinbotham, supra,* 712 P.2d at 998, our supreme court held that charges against a defendant must be dismissed for violation of the prompt notification provision unless the prosecution demonstrates that no prejudice to the defendant resulted from the violation. In *People v. Johnson,* 819 P.2d 1114, 1115–16 (Colo.App.1991), a division of this court held that, while the burden of proving an absence of prejudice rests with the prosecution, the defendant must first assert some claim of prejudice to frame the issue to be determined, as the alternative would require the prosecution to prove an unlimited negative.

### A. First and Second Detainers

■ As to the first and second detainers filed with the U.S. Marshal, defendant asserted in the trial court, and again on appeal, that the federal authorities failed to timely notify him of those detainers. However, on August 29, 2003, the prosecution, pursuant to *People v. Higinbotham, supra,* 712 P.2d at 998, and *People v. Johnson, supra,* 819 P.2d at 1115–16, requested that defendant state "any claims of prejudice based on the failure of federal authorities to notify him of Colorado detainers." On September 11, 2003, defendant responded by alleging the delay hindered the preparation of his defense, which was the subject of a separate motion to dismiss on due process grounds, and he alleged prejudice relating to his security classification at USP Florence, which only implicated the third detainer. Therefore, in our view, by not claiming prejudice caused by the first and second detainers, he has waived or abandoned any claim as to those detainers.

■ Further, at the time the first two detainers were lodged, defendant was not serving a sentence within the meaning of the IAD, which states, in part, that it applies "[w]henever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the ... term of imprisonment ... a detainer has been lodged against the prisoner." Section 24–60–501, Art. III(a). The first and second detainers were lodged with the U.S. Marshal on May 4, 2001 and January 2, 2002, respectively, and defendant was sentenced January 16, 2002. Therefore, at the time the first and second detainers were lodged, defendant was in pretrial or presentence confinement and was not serving a "term of imprisonment" within the meaning of the IAD. *See also People v. Walton,* 167 P.3d 163, 165 (Colo.App. 2007); *Christian v. United States,* 394 A.2d 1, 40 (D.C.1978) (holding that the IAD is inapplicable to pretrial detainees).

Therefore, in our view, only the third detainer is at issue.

### B. Third Detainer

■ As to the third detainer, the trial court addressed whether defendant had suffered prejudice under *People v. Higinbotham, supra,* and *People v. Johnson, supra.* This inquiry was limited to the prejudice claimed by defendant, his security classification at USP Florence.

In that regard, the trial court found:

> [D]efendant has been presented with opportunities in that particular facility (USP Florence). According to the testimony presented, he has taken advantage of one program and that is the G.E.D. program that was available to him. Otherwise, he has not availed himself of any opportunities in that particular program for any rehabilitat[iv]e programs that are otherwise available to him. I'm talking about vocational as well as rehabilitative programs.
>
> Because of that, even if I need to reach the point of finding there has been some prejudice to the defendant from the failure to promptly notify under Article III, I cannot make that finding to the point where I find that dismissal of the complaint in this case pursuant to a violation of Article III should be had.

■ We defer to the trial court's findings of fact if they have some support in the record. *Arapahoe County Bd. of Equalization v. Podoll,* 935 P.2d 14, 18 (Colo.1997).

Here, the trial court's findings are supported by defendant's USP Florence case manager's testimony that defendant would have been scored for the maximum level of security without any detainers, and would have remained at that level of security for the period this case was pending.

In addition, while defendant was not formally notified of the detainer until December 31, 2002, the first habeas writ was issued July 29, 2002, seventeen days after the third detainer was lodged. Defendant first appeared in Arapahoe County District Court on August 28, 2002, forty-seven days after the third detainer was lodged and defendant was informally notified of it. Indeed, defendant was in court seven times prior to his formal notification of the third detainer on December 31, 2002. Thus, despite the failure of the prison officials to promptly notify defendant of the third detainer, a speedy disposition of the third detainer commenced almost immediately after it was lodged without defendant's having to request it. Therefore, the failure to promptly notify defendant did not prejudice him by delaying the resolution of the charge underlying the detainer.

Finally, we note that, while our supreme court has held that dismissal is the appropriate remedy in those instances in which the sending state fails promptly to notify a defendant of a detainer and the defendant is prejudiced, a small but growing number of jurisdictions have held that dismissal is not the appropriate remedy for the failure of the sending state to promptly notify a defendant because that would permit the authorities of the sending state to frustrate a prosecution in the receiving state. *State v. Clark,* 222 Kan. 65, 563 P.2d 1028, 1031–32 (1977); *State v. Reynolds,* 218 Neb. 753, 359 N.W.2d 93, 99 (1984); *Commonwealth v. Gonce,* 320 Pa.Super. 19, 466 A.2d 1039, 1044 (1983); *Schin v. State,* 744 S.W.2d 370, 374 (Tex.App.1988); *State v. Barefield,* 47 Wash.App. 444, 735 P.2d 1339, 1346 (1987), *aff'd,* 110 Wash.2d 728, 756 P.2d 731 (1988); *see also* 4 Wayne R. LaFave et al., *Criminal Procedure* § 18.4(c), at 713 (2d ed.1999).

We conclude that the trial court did not err in concluding that defendant was not prejudiced by any delay in notification of the third detainer. Therefore, dismissal is neither mandated nor warranted for the further reasons expressed.

## IV. Anti–Shuttling Provision

Defendant next argues that there were multiple violations of § 24–60–501, Art. IV(e), commonly known as the anti-shuttling provision, thus mandating dismissal with prejudice of the charges. We disagree.

The third detainer was lodged on July 12, 2002. On August 27, 2002, defendant appeared before the Arapahoe County District Court on a habeas writ and requested a delay in the proceedings so that he could contact private counsel. The court granted this request, and defendant returned to USP Florence three days later. On September 25, 2002, defendant again appeared on a habeas writ without private counsel and specifically requested to be sent back to USP Florence to better enable him to obtain private counsel, who appeared, at the time, to be his New Mexico counsel. After exploring alternatives, the court acceded to his request, and defendant was returned to USP Florence on October 6, 2002.

On October 23, 2002, defendant again appeared on a habeas writ without private counsel, was appointed counsel, and waived his right to a timely preliminary hearing. Defendant was returned to USP Florence on November 5, 2002. On December 6, 2002, upon appearance of private counsel, defendant filed a motion to continue the preliminary hearing, and the court reset the preliminary hearing. On February 24, 2003, defendant returned to Arapahoe County on a habeas writ for his preliminary hearing and remained there until March 4, 2003. On April 14, 2003, defendant's detainer was removed apparently by the officials at USP Florence.

Subsequently, on May 9, 2003, defendant returned to Arapahoe County on a habeas writ for arraignment and to confer with counsel and remained there until May 14, 2003. He entered his plea of not guilty on May 12, 2003.

On June 3, 2003, defendant filed his first motion to dismiss for violation of the IAD,

which was later supplemented on more than one occasion. On October 11, 2003, defendant returned to Arapahoe County on a habeas writ for trial, which was continued at his request, and, because of his IAD objections, he remained in Arapahoe County until October 7, 2004.

On October 7, 2004, apparently as the result of an administrative error, and contrary to the trial court's specific order, defendant was returned to USP Florence, where he remained until trial commenced on November 22, 2004. As to this latter transfer, the trial court found that "there is a violation of the Court's specific order that [defendant] remain in the custody of the Arapahoe County Sheriff's Office pending today's date" and "this was [not] a purposeful violation on the part of the People."

As previously discussed, § 24–60–501, Art. IV, sets forth the manner in which the prosecutor in the receiving state can obtain the presence of the defendant for trial. It requires that the defendant be tried within 120 days of his or her arrival in the receiving state. It also has an anti-shuttling provision, § 24–60–501, Art. IV(e), which states:

If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

██ Further, § 24–60–501, Art. V(e), provides that "[a]t the earliest practicable time consonant with the purposes of this agreement, the prisoner shall be returned to the sending state." The anti-shuttling provision is triggered by the use of habeas writs after the lodging of a detainer. *United States v. Mauro, supra,* 436 U.S. at 361–62, 98 S.Ct. at 1848.

The Supreme Court in *Alabama v. Bozeman,* 533 U.S. 146, 156, 121 S.Ct. 2079, 2086, 150 L.Ed.2d 188 (2001), held that, unless the provisions of § 24–60–501, Art. IV(e), are waived, there are no "de minimis, technical, or harmless" violations of the anti-shuttling provision. The Supreme Court described the possible purposes of the anti-shuttling provision:

A provision that prevents returning a prisoner who has arrived in the receiving State does not directly increase the number of days the prisoner will spend in rehabilitation in the sending State. Rather, it directly and intentionally decreases the number of days that prisoner will spend in the sending State.

This point is obvious once one keeps in mind that the trial must take place within 120 days of the prisoner's arrival in the receiving State. Article IV(e)'s requirement that the prisoner remain in the county jail means that the prisoner will spend all of those 120 days away from the sending State's rehabilitation programs....

The Agreement not only prevents "return," but it also requires the receiving State to pay for the prisoner's incarceration in that State during the period prior to trial. That requirement may provide the receiving State with an incentive to shorten the pretrial period—to proceed to trial faster than 120 days or not to seek extensions—thus disposing of detainers, and the attendant "uncertainties which obstruct programs of prisoner treatment and rehabilitation," in the most "expeditious" manner....

Alternatively, the Agreement's drafters may have thought that the "shuttling" itself, i.e., the movement back and forth among prisons, adds to the "uncertainties which obstruct programs of prisoner treatment and rehabilitation." And they may have sought to minimize the number of "shuttles" for that reason alone.

*Alabama v. Bozeman, supra,* 533 U.S. at 154–56, 121 S.Ct. at 2085–86 (citations and emphasis omitted).

██ With respect to waiver, because the IAD is statutory in nature and not founded on constitutional rights, there is no requirement that a valid waiver of IAD rights be "knowing and intelligent." *Yellen v. Cooper,* 828 F.2d 1471, 1474 (10th Cir.1987). Rather, waiver is shown by proof that the prisoner has affirmatively requested treatment in a manner contrary to the protections of the

IAD. *People v. Brown, supra,* 854 P.2d at 1335. To conclude otherwise would enable a defendant to accept treatment inconsistent with the IAD's time limits and then recant later, thereby making "dismissal of the indictment turn on a hypertechnical distinction." *New York v. Hill,* 528 U.S. 110, 118, 120 S.Ct. 659, 666, 145 L.Ed.2d 560 (2000).

 This interpretation of waiver corresponds with waiver of a right to a speedy disposition under the Uniform Mandatory Disposition of Detainers Act (UMDDA). "The UMDDA controls the disposition of detainers within the State of Colorado and guarantees a defendant in a criminal case the right to a speedy trial." *People v. Shreck,* 107 P.3d 1048, 1056 (Colo.App.2004). However, a defendant may waive his or her UMDDA speedy trial rights "expressly or by affirmative conduct, such as by participating in setting the trial date outside of the speedy trial provisions" or expressly consenting to the delay. *People v. Garcia,* 17 P.3d 820, 823 (Colo.App.2000). Unless the defense makes a speedy trial objection at the time a trial date is offered, the waiver provision of § 18–1–405(5.1), C.R.S.2006, applies. "[A] defendant cannot stand mute and allow a trial schedule to be adopted without registering his complaint that such schedule violates his speedy trial rights." *People v. Franco,* 74 P.3d 357, 358–59 (Colo.App.2002) (quoting *People v. Atkins,* 885 P.2d 243, 244 (Colo. App.1994)).

Accordingly, courts have declined to apply the anti-shuttling provision of the IAD when the defendant requests a continuance of the trial and the prosecution is ready to proceed. *United States v. Cumberbatch,* 438 F.Supp. 976, 979 (S.D.N.Y.1976), *aff'd,* 563 F.2d 49 (2d Cir.1977); *Neville v. Friedman,* 67 Ill.2d 488, 10 Ill.Dec. 575, 367 N.E.2d 1341, 1344 (1977); *Commonwealth v. Lloyd,* 341 Pa.Super. 107, 491 A.2d 173, 176–77 (1985); *State v. Allen,* 269 S.C. 233, 237 S.E.2d 64, 67 (1977); *Ball v. State,* 891 S.W.2d 240, 242 (Tenn.Crim.App.1994). Other courts, including our supreme court, have considered whether a defendant requested a continuance when determining if the anti-shuttling provision was waived. *Hughes v. Dist. Court,* 197 Colo. 396, 401–02, 593 P.2d 702, 706 (1979);

*Gillard v. State,* 486 So.2d 1323, 1324 (Ala. Crim.App.1986). These holdings are consistent with *Alabama v. Bozeman, supra,* in which the Supreme Court indicated that one possible purpose of the anti-shuttling provision of the IAD is to assure a speedy resolution of the pending charges.

 Here, we conclude that defendant waived the anti-shuttling provision of the IAD by requesting numerous and lengthy continuances during which he either expressly requested or acquiesced in his return to USP Florence. Initially, defendant delayed the proceedings to obtain private counsel. Subsequently, the trial was delayed several times because defendant was not ready to proceed. Finally, the trial was delayed to allow full briefing of defendant's IAD arguments, following which defendant requested a stay of the proceeding to seek relief in the supreme court under C.A.R. 21. Defendant has never argued that he was not timely brought to trial under the IAD.

In addition, transfers back to USP Florence were consistent with the purpose of the IAD as the transfers provided defendant with the opportunity to continue his rehabilitative classes and were to his benefit. *United States v. Chico,* 558 F.2d 1047, 1049 (2d Cir.1977); *State v. Sassoon,* 240 Ga. 745, 748, 242 S.E.2d 121, 123 (1978).

Given these circumstances, we conclude that defendant waived the provisions of § 24–60–501, Art. IV(e).

The judgment is affirmed.

Judge MÁRQUEZ and Judge FURMAN concur.